## WILLIAM ALFORD ET AL., RESPONDENTS, *v.* NATHANIEL DEWIN ET AL., APPELLANTS.

## RESPONSE TO PETITION FOR REHEARING.

The action of ejectment is unknown to our system.

Tenants in common may maintain a joint action for possession of real estate under our system.

Where parties having a joint right of action bring suit, and pending the litigation sever their interests, the suit will not abate.

A survey, in which all the corners are marked and all the lines run and marked except the closing line between the first and last corner stake, is a legal survey under the Utah Statutes.

Plaintiffs claiming the right of possession under a survey, are not bound to show they inclosed the land within one year after survey, when the defendants entered within the year.

*Nourse & Lewis*, Counsel for Petitioners.

*Cox & Gaston*, Counsel for Respondents.

Points and authorities of petition for rehearing :

*First*—This Court was in error in supposing that alienation of the property pending suit did not prevent the Court from giving judgment of restitution.   (See sec. 256 of Practice Act.)

*Second*—The judgment in this case is a joint judgment for land held in severalty by at least three different and several owners.

*Third*—The Court below instructed the jury to bring in separate verdicts against each defendant. They brought in a joint verdict against all.

*Fourth*—No notice of hearing was ever given by either party. For that reason, when case was called, defendants moved for continuance, which was refused. This was error.

This case having been decided before the Territorial Court, this Court in reviewing that decision looked into the original briefs and examined the whole case instead of confining itself to the technical points made in the petition for a rehearing. All the points made in the original brief of appellant are noticed in the opinion of the Court. The facts of the case are also stated in the opinion.

Opinion by BEATTY, J., BROSNAN, J., concurring.

This case was decided by the Territorial Court of Nevada, and comes before us on petition for rehearing. That our views of the case may be made more intelligible (the original opinion not being published), we will treat it rather as one coming before us for decision than as a mere application for rehearing.

The facts are as follows: Plaintiffs and others, in the Fall of 1859, commenced some improvements on a tract of timber land. In the Summer of 1860 the plaintiffs and others then interested with them, caused a survey to be made by the County Surveyor of a portion of land including the improvements already made, and had this survey recorded.

The survey, certificate of Surveyor, etc., is not in the transcript. It would seem probable from the description of the land contained in the complaint, and imperfect and incomplete evidence contained in the transcript, that the survey was made either in the form of a parallelogram, or else of a six-sided figure, being a parallelogram less a square notch taken out of the northeast corner.

All the corners of the survey seem to have been fixed by the

Surveyor, but the west line connecting the southwest and northwest corners, was not run or marked through.

In the Fall of 1860, a few months after the survey was made, defendants came within its lines and commenced their improvements.

Before the commencement of this suit one of the parties in the original survey (Lovejoy) got his interest therein segregated and set apart to him. The remaining owners, or parties interested in the survey, then brought suit against Lovejoy and those parties who had gone within the lines of the survey in 1860. There were also one or more defendants who had entered since 1860 as successors in interest of those who made the original entry.

The land sued for is a six-sided figure, being a parallelogram, less a square notch out of the northeast corner. There is nothing in the transcript to show whether the land sued for embraces the whole of the original survey, or whether (which is quite probable) the notch in the northeast corner is caused by segregation or setting off that notch to one of the locators.

At the trial the suit was dismissed as to Lovejoy, and a general verdict against the other defendants. The judgment was for the land described in the complaint, "save the portion claimed by Lovejoy," and for costs, but no damages.

It further appears in evidence that after suit was brought, but before judgment, there had been deeds of partition between two of the plaintiffs, whereby there was an attempt by these two to segregate portions of the land between themselves.

As the original brief of appellants is much fuller on all the points made on appeal than the petition for rehearing, and embraces the same propositions, we will notice the points in that brief which we think embrace propositions requiring a settlement in this Court.

The appellants complain that certain instructions asked by them were refused.

As the principles upon which those instructions were asked and refused will be discussed in noticing other points, we need not more particularly refer to them.

The next point after the instructions made by appellants is, that plaintiffs could only recover as joint owners, and it was

necessary that all jointly entitled to possession should join in the action. That the evidence shows that Goss and others were jointly interested, but they are not parties plaintiff.

We think the facts do not sustain this proposition. It is shown, it is true, that Goss and others, who are not named as plaintiffs, were parties to the survey; that they were interested in having the survey made. But it is not shown that they were in possession of any portion of the land surveyed when defendants are alleged to have entered, nor of any portion sued for, at the time this suit was brought. They may have abandoned their interest in the survey, or have sold to their co-tenants, or their portion may have been set apart to them. The statement on motion for new trial does not show that it contains all the testimony. If a grant or conveyance is shown to have vested title to real estate in a party, perhaps the legal presumption would arise that the title remained in that party until he was shown to have parted with it. But we are not satisfied that after showing a party in possession of public land, the law would presume that party always to remain in possession. But be that as it may, in this case the statement not purporting to contain all the evidence, we must suppose, in support of the judgment, that the non-joinder of Goss and others of the original locators was sufficiently accounted for.

The next point made is that plaintiffs were tenants in common, and as such could not maintain a joint action of ejectment, and for this proposition several authorities are quoted.

We think counsel have misunderstood the authorities quoted, with the exception, perhaps, of the California cases cited. Where the fictions of the common law prevail, it has frequently been held that the action of ejectment cannot be sustained on a joint demise of all the tenants in common, but that if the right of possession rests in several tenants in common, and they desire a judgment for the entire premises, you must in the declaration aver several demises by each of the several tenants. Now, as these demises are a mere fiction, having no existence in reality, and the plaintiff is a mere nominal party, the suit being really prosecuted by those persons from whom the plaintiff is alleged to to have received his demises, the result of these decisions is that tenants in common may

join in the prosecution of an action of ejectment, but in so doing must follow certain forms different from those followed by joint tenants.

When any controversy has arisen about the joinder or non-joinder of tenants in common in an action of ejectment, it has been not in regard to the rights of such tenants to join in prosecuting the action, but as to matter of form in pleadings. Even on the matter of form, the decisions have not been uniform.

Many Courts of the highest authority have held that a declaration on the joint demise of tenants in common was good.

For a forcible and common sense decision of this kind we would refer to Caine's (N. Y.) Reports, page 169. Whilst it is held generally that fictitious demises of tenants in common to the plaintiff in ejectment must be several, yet it is held, that if tenants in common make a real joint demise to a tenant, that tenant may maintain ejectment on a fictitious demise to a nominal plaintiff. (See Adams on Ejectment, p. 210, marginal paging.) We cannot see any reason why this distinction is made.

If tenants in common may join in an actual demise or lease of the common premises, and the party holding under that demise may maintain his possession, we cannot see why in the case of a fictitious demise the plaintiff in ejectment should be held to have no right of possession.

When the action of ejectment was first introduced into practice in England, the demise to the plaintiff was real and not fictitious.

If, then, two or more tenants in common owning and having right of possession to a tract of land, had all gone on to the land, and whilst actually thereon had joined in a lease to one tenant, put him in actual possession of the whole, and he had subsequently been expelled, doubtless he could have maintained the action of ejectment. Because he was actually in possession of the whole premises, placed there by the parties who had a right to place him there, and being rightfully in possession of the whole and expelled from the whole, he would be entitled to recover the whole. His right would arise from his rightful possession and not from the particular form of the

instrument by which his right was evidenced.    Then, when the lease, entry and ouster became mere fictions, confessed by the defendant to avoid trouble and delay, we can see no reason why the Court should have adopted the rule that demises by tenants in common should be several and not joint.

For these reasons, we are much inclined to believe the doctrine laid down in 2 Caine (to which we have before referred), is the better rule, although the weight of authority is certainly the other way.

But whatever rule might be established in regard to the proper form of demise by tenants in common, it would not determine the question before us.    We have in our practice no action of ejectment.

When a suit is to be brought for the possession of land, the claimant makes no demise, real or imaginary.

This suit is not brought in the name of a real or imaginary tenant.    The claimant brings suit in his own name, asserting simply his *title* to the land, or his right of possession as against the then occupant.    It may be possible under some circumstances for a plaintiff to recover, although the proof might show that he had no right to the land, but had himself been a mere naked trespasser thereon.

As, for instance, A has a perfect title to a piece of land ; B disseizes A, and acquires complete possession, and leases the land to C.    C, the tenant, at the expiration of his term, refuses to surrender the possession to his landlord.    There can be no doubt B may recover possession, although C has a new lease from the real owner, A.    Now, under the common law system, if B had brought his action of ejectment, he could recover in the case stated.    Because ejectment simply determines the right of possession as between plaintiff and defendant.    But if he had brought the writ of right, which is a real action determining the *title* to the land, then showing the title in A, would have defeated the action.    Tenants in common have unity of possession, but not of title.    Therefore, they must join in actions for injury to their possession, but cannot join in real actions, when the question of title alone is determined.    (See 2d Vol. Blackstone's Commentaries, Chitty's edition, p. 174, note 29.)

Our action is one which may be brought merely to establish

the right of possession as against defendant, or it may be one in which the ultimate right to the property is to be determined, therefore all the old common law rules are inapplicable.

It appears to us we are left without authority on the point, and may establish that rule which will be most conducive to justice and the general convenience of the community.

Here, where mining claims are frequently owned by hundreds of tenants in common, it would be extremely inconvenient to hold that each one having an interest in the claim must sue separately whenever the possession of the claim is wrested from the rightful owners. There being, in our opinion, no respectable authority to the contrary, we shall hold that under our system all tenants in common may join in an action to recover possession of the common property.

The next point made by appellants is, that Alford having deeded to Persons all his interest in certain portions of the premises sued for pending the suit, and Persons having deeded his interest in certain other portions in like manner to Alford, neither was entitled to a joint judgment for the whole. That their right to a joint judgment had ceased before the trial, if it ever existed.

We are referred to the 256th section of the Practice Act in support of this position.

That section reads as follows:

" In an action for the recovery of real property, where the plaintiff shows a right to recover at the time the action was commenced, but it appears that his right has terminated during the pendency of the action, the verdict and judgment shall be according to the fact, and the plaintiff may recover damages for withholding the property."

We do not understand that section as the counsel for appellants understand it. We think that section has reference to those cases where the title of plaintiff only consists of a tenantcy of a temporary estate, and that estate terminates by the lapse of time, or happening of some contingency upon which it was dependent during the litigation. We think if a party having a title to real estate brings suit for it against a disseizor, and pending that suit he sells his title (as he may rightfully do under our statute), the suit will not abate, neither will the

recovery be restricted to damages, but he will get a judgment for the possession, which will inure to the benefit of his vendee. If the plaintiffs had a right to a joint judgment when the suit was brought, no subsequent severance will deprive them of the right to have that judgment. It is not the policy of our law to prevent alienations of real estate even pending litigation.

The next point in appellants' brief, requiring notice, is the objection raised to the sufficiency of the survey. It is objected that the survey was insufficient to confer any right on the plaintiffs, because the surveyor omitted to run and mark the west line.

The laws of Utah Territory, pages 174–5, of printed laws, provides for the appointment of County Surveyors, and directs them in certain cases to make surveys, etc., and provides that their "*certificate* of survey shall be *title of possession* to the person or persons holding the same." It does not point out how the surveyors shall make his surveys. Now, if the three sides of a quadrilateral survey are run, the simple running of a straight line, connecting the extremity of the two side lines, completes the survey. This may be done without difficulty by almost any one. All the data for determining the exact location of the land in the survey is given. We are not prepared to say it is not a survey because one line is left open. The beginning and the end of that line are given. In running the line all that could be done in addition would be to mark the line between the corners. If a quadrilateral survey was so made as to establish the four corners without running any of its external lines, it might be a good survey.

We think this objection to the survey is not well taken.

Another objection to the plaintiffs' right to recover, is that they did not enclose the land, as required by the Utah statutes, within one year after the survey. A complete answer to this is, that before the expiration of the year the defendants had entered. The plaintiffs being wrongfully ousted could not fence.

At least this is sufficient excuse for not fencing. For these reasons a rehearing is denied.

LEWIS, C. J., having been of counsel, did not sit in this case.