# GORTON, Appellant, v. RICE.

### Division One, February 5, 1900.

1. **Accretions:** FRACTIONAL SECTIONS: DEEDS. Where a deed conveys a fractional section, which originally was bounded by the Missouri river, it carries with it the right to all the accretions that have formed thereto. Nor is the grantee's right to the accretion lessened by a description of the land as "the northeast quarter of the northeast quarter," and a recital therein that the deed conveys "a full forty acres of land in the same manner as if it had been originally surveyed as containing such by the Government."

2. ———: ———: ———: VARIANCE BY ORAL TESTIMONY. Nor can the grantee's right to the accretions under such a deed be altered, varied or lessened by oral conversations or agreements, or by the fact that at the time he purchased the land he was to get only forty acres and the boundary thereof was pointed out to him.

3. ———: ADMEASUREMENT: EXTENSION OF SECTION LINE. Where the river front to the accretions to two adjoining fractional forties, owned by the parties to the suit, is at the time of the trial, of the same proportional length as was the original river front at the time of the Government survey, the accretions to each forty may be determined by extending to the river the line between the fractional forties as fixed by the original survey. If this method does not do substantial justice, then from the point on the original river bank where this line reached the river, a line should be drawn at right angles with the general course of the river, and the accretions on one side belong to one shore owner, and those on the other to the other.

4. ———: ———: RIPARIAN RIGHTS. Accretions should not be so divided between coterminous proprietors of fractional surveys, as to entirely shut off either from his riparian rights.

Appeal from Ray Circuit Court.—*Hon. E. J. Broaddus,* Judge.

REVERSED AND REMANDED.

*Garner & Divelbiss* and *J. L. Farris, Jr.* for appellant.

(1)   The deed from Charles Barger to George N. Rice, conveying him eighty acres of land and describing it as the north half of northeast quarter of section seventeen, township fifty, range twenty-eight, was a complete, full and definite description of land circumscribing and defining the lines of the land he was entitled to by the regular congressional subdivision of land and that respondent can not go beyond the south line of said eighty-acre tract.   Martindale on Conveyancing, sec. 87; Campbell v. Johnson, 44 Mo. 247; Shelton v. Heatherly, 16 Mo. 124; Jamison v. Topiano, 48 Mo. 194; Gibson v. Bogy, 28 Mo. 478.   (2)   The law of accretions can not be invoked in this case for the reason that the boundaries of respondent's land was definitely set out in his deed and he fully understood the boundaries, by the same being shown him at the time prior to his purchase.   Martindale on Conveyancing, secs. 87 and 88.   (3)   If the law of accretions could be invoked in this case, as contended by respondent, then in that event respondent would not be entitled to the entire strip of land in controversy but would only be entitled to that part of said land north of a line drawn at right angles to the original bank of the river for the south line of north half of northeast quarter of section seventeen.   Angell on Water Courses (7 Ed.), ch. 11, secs. 55, 56.

*J. L. Farris* and *Joseph E. Black* for respondent.

(1)   As respondent claims title to land to which the accretions in controversy have formed, by intermediate warranty deeds, from Thaddeus Gorton, the common source of title, and said deeds in the conveyance of said lands, do not except said accretions, and it is admitted and claimed that Thaddeus Gorton, as original owner of said lands, was owner of said accretions, it follows under the law of the case that

respondent is owner of the same.   1 Am. & Eng. Ency. of
Law (1 Ed.), p. 136; Campbell v. Laclede Gas Co., 84 Mo.
353; Erestminger v. People, 49 Ill. 384; Berry v. Snyder, 3
Busch (Ky.), 266; Wood v. Huston, 17. Wis. 518.   (2) All the
conditions and terms of the sale are contained and merged in
the deeds in evidence and can not be changed or varied by
previous or contemporaneous parol or oral agreement, terms
or provisions between the parties.   State ex rel. v. Hoshaw,
98 Mo. 358; Tracy v. Union Iron Works, 29 Mo. App. 342.
(3)   The law preserves to each adjoining riparian owner his
water boundaries and privileges.   Lamprey v. Metcalf, 53
N. W. Rep. 1193.   (4)   The principle which pervades all
mode of division (of accretions or alluvion) is that no regard is
to be paid to the direction of the side lines between contiguous
proprietors.   In all cases when practicable, every proprietor is
entitled to a frontage of the same width on the new shore as on
the old shore without regard to the side lines of the main land.
Gould on Water Courses, sec. 162; Crandall v. Allen, 118
Mo. 403.

ROBINSON, J.—This is an action of ejectment for a
strip of land of about six and one-half acres, described in the
petition as follows:   Beginning at a point 20 chains south of
the northeast corner of section 17, township 50, range 28,
thence west 6.70 chains, thence south one and one-half
degrees west 10 chains, thence south 5 degrees east 3.84 chains,
thence north 38 degrees east 9 chains, thence north 6.45 chains
to place of beginning.   The case was tried by the court, with-
out the aid of a jury, and a finding and judgment was awarded
to defendant and the case brought here on plaintiff's appeal.

Confused with much useless and irrelevant testimony,
upon which the case in the main seems to have been tried in
the circuit court, and for which its judgment must be reversed,
the following essential facts are to be found in the record.

The present southeast quarter of the northeast quarter of

section 17, township 50, range 28, and the northeast quarter of said northeast quarter, now owned respectively by plaintiff and defendant, were at the time of the original survey of the lands of the State by the Government, laid off and platted as fractional forties. The Missouri river ran almost diagonally through and past said fractional forties, so as to leave in the south forty now owned by plaintiff, only about 3 or 4 acres of land, and in the north forty now owned by defendant about 20 or 25 acres of land; and afterwards (but prior to the time all the land in said fractional northeast quarter of section 17 aforesaid was owned by Thaddeus W. Gorton, through whom plaintiff and defendant now claim their respective tracts), the Missouri river while maintaining its general course and direction had receded gradually to the eastward, and accretions had formed to the land in the original fractional forties in the east half of said original fractional northeast quarter of section 17, until the river line in front of said land was a quarter of a mile or more to the eastward from where it was when the land was originally surveyed by the government in 1817. The land in controversy, as shown by the testimony (as well as by the description thereof in the petition) lies south of the extended line between the original northeast and southeast fractional quarters of said fractional northeast quarter, and east of the original land in said fractional southeast quarter of fractional northeast quarter now owned by plaintiff. Defendant entered upon and fenced the strip in controversy in the year 1894, and has remained in possession of same ever since. Prior to the fencing of same by defendant it had been wild and unimproved land, except a small tract of about one-half acre that had been cleared and cultivated by one Mansell, under authority from Thaddeus W. Gorton during his lifetime, but not fenced. There was also testimony tending to show that Thaddeus Gorton up to the time of his death always claimed the strip in controversy along with all the other land that had formed and accreted in front of said fractional

forty now owned by defendant, and that on one or two
occasions he cut from this strip some of the willows growing
thereon for fire wood.   A plat was also introduced in evi-
dence, which seems to have been recognized as substantially
correct by both plaintiff and defendant, showing the whole of
fractional northeast quarter of section 17 aforesaid, and how
the Missouri river ran through and past it at the time the
land was originally surveyed by the government (making three
of its quarters fractional), as well as its present course and
location with reference to its then course and location, which
plat also shows the extent and character of the accretions that
have formed in front of all of the three fractional quarters
in said original fractional northeast quarter of said section
seventeen, caused by the course and change of the river.

Plaintiff then took up much time in attempting to show
that when his father Thaddeus W. Gorton sold the fractional
northeast quarter of fractional northeast quarter of section 17
aforesaid, it was in connection with the northwest quarter of
said fractional northeast quarter under the description as
recited in the deed "the north half of the northeast quarter
of section 17, 50, 28 in Ray county," not naming or designat-
ing the quarters as fractional, and that by the same descrip-
tion James Barger, to whom his father sold the land, recon-
veyed it to defendant herein in 1894.   Plaintiff then sought
to establish by said Barger that when he bought the land of
his father, it was his understanding that he was getting but
eighty acres of land, and that when he resold it to defendant,
he conveyed to him but eighty acres, and told him that he had
bought and owned but eighty acres, and that he pointed out to
defendant the south boundary line of his land, and that said
line is north of the strip in controversy now held and claimed
by defendant, and that the north half of said original frac-
tional northeast quarter of seventeen, at the time it was pur-
chased by defendant and for a long time prior thereto, had
become by accretion a full eighty-acre tract, and more.

The plaintiff at the close of the testimony asked the court to give the following declarations of law, which clearly indicate the theory upon which he tried the case:

"1. If the court finds and believes from the evidence that T. W. Gorton purchased the northwest quarter of northeast quarter and east fractional half of northeast quarter of section 17, township 50, range 28, from Helen G. Price, that at the date of the purchase and for a long time prior thereto the land in controversy and other lands in same quarter section was formed as accretions to the east fractional half of northeast quarter of said section, township and range, then said Gorton by such purchase became the owner of all the accretions thereto, including the land in controversy. That afterwards he, T. W. Gorton, sold certain lands under the description of north half of northeast quarter of 17, 50, 28, to Barger, and said Barger under same description sold said land to defendant, said deeds only conveyed that part of the accretions that was necessary to make the said north half of northeast quarter, 17, 30, 28, full in the same manner and to same extent as though said land under the original or congressional survey, was a full quarter section. And if the land in controversy lay south of the south line of north half of northeast quarter of said section, township and range, then the plaintiff is entitled to recover.

"2. If the court finds from the evidence that the lands in controversy lay south of the south line of north half of northeast quarter, 17, 50, 28, if extended; that T. W. Gorton purchased northwest, northeast and east fractional half of northeast quarter of said section, township and range from Helen G. Price; that at the date of said purchase the land in controversy was accretions formed to said east fractional half lands under the description of north half northeast quarter, 17, 50, 28, and that it was understood and agreed between Barger and Gorton that a certain fence running east and west of northeast quarter; that said Gorton sold to Barger certain

on south line of said tract of land was to be the south bound-
ary thereof, and that Barger under said deed only took posses-
sion to said fence or line, and at the time said Barger conveyed
said lands to defendant, or prior thereto, the defendant had
knowledge of where the south line of his land was, and that
the fence was the south boundary line of said land, and that
the lands in controversy lay south of said line or fence, then
the plaintiff is entitled to recover."

While these instructions are wrong as declarations of law
applicable to the facts that were made to appear, and for that
reason justified their refusal by the court, still we think that
enough was shown (after the irrelevant matter, upon which
plaintiff seems to have too much relied, have been discarded)
to have warranted a finding for the plaintiff, and that it was
error on part of the court in view of these facts to have found
against plaintiff, although the plaintiff contends, as his first
instruction refused indicates, that as heir of Thaddeus W.
Gorton, he was entitled to all the accretions that had formed to
the east half of the original fractional northeast quarter of
section seventeen after the original northeast fractional quarter
of the northeast fractional quarter (now owned by defendant)
was made a full forty, or the north half of said fractional
northeast quarter was made a full eighty-acre tract; or to use
the exact language of the instruction instead of my conclusion
from it, "said deed [referring to the deed through which
defendant claimed title and right to the land purchased of
Barger, and through it the land in controversy, as an accretion
thereto] only conveyed that part of the accretions that was
necessary to make the north half of the northeast quarter,
17, 57, 28, full in the same manner and to same extent as
though said land under the original or congressional survey
was a full quarter section."

In other words, plaintiff contended that the deed to de-
fendant was a full and complete description of the land pur-
chased by him, circumscribed and limited to the extended con-

gressional land lines bounding the eighty acres called for therein; and that in addition to the boundaries as indicated by the deed, the north and south boundary lines between the land now owned by plaintiff and the defendant, was at the time of his purchase, pointed out to defendant and he fully understood its location and limit, and that the land in controversy was not included therein; that as defendant's deed to the land, by its description shows, never reached the water's edge, the law of accretion so far as he is concerned, has no application to the facts in issue.

That contention of plaintiff, though erroneous, should not have worked his defeat in a suit for land that clearly was an accretion to the southeast fractional quarter of the northeast fractional quarter of section seventeen aforesaid, which ho owned by inheritance from his father, the common source of title through whom plaintiff and defendant claimed respectively, the south and north fractional quarters of the east half of said northeast fractional quarter of seventeen, if it can be said that the description named in defendant's deed is sufficient to have conveyed to him the fractional northeast quarter of fractional northeast quarter of seventeen, which plaintiff concedes defendant now justly owns and is entitled to. If the description in defendant's deed was sufficient to have conveyed to him the northeast fractional quarter of fractional northeast quarter of seventeen, then it carried with it the right to all the accretions that had formed thereto, and the mere fact that it was described and designated as containing a full forty acres of land "in the same manner as if it had been originally surveyed as containing such by the government," can have no effect as a restriction upon defendant's right to the accretions that had in fact formed to said fractional northeast quarter of fractional northeast quarter owned by him, as likewise was ineffectual the testimony offered by plaintiff, to show that at the time the defendant purchased the land he was told that he was to get but eighty acres of land,

and that the south boundary thereof was pointed out and shown to him. Those were all questions that had for their object the limitation and curtailment of defendant's rights to accretions that formed to his fractional quarter, and were not properly in the case. While this is true, and while plaintiff took too narrow a view of defendant's rights, in this suit wherein that question should not have arisen, it should not operate to defeat plaintiff in a suit for the possession of the land, which under the relevant and material facts disclosed, were shown to have been part of the accretions formed to the fractional quarter owned by himself.

The only issue that properly should have arisen in this case, was as to which adjoining fractional quarter, owned respectively by plaintiff and defendant, the land in controversy was an accretion, it being agreed at the outset that the controverted strip was part of an accretion to the east fractional half of northeast fractional quarter of section 17.

There being no words of limitation appearing in defendant's deed, to indicate that he was to be restricted in his rights to the amount of the accretion that had formed to the northeast fractional quarter of said northeast fractional quarter of 17, and as all previous or contemporaneous oral conversations, agreements or understandings to the contrary, with him regarding the same, were inadmissible as evidence to vary or alter the full force of his deed, or to restrict its terms, all accretions to the northeast fractional quarter of the northeast fractional quarter of 17 belonged to defendant unquestionably, and the only issue in this case should have been as to which fractional quarter of said section 17, the strip was an accretion. But as said above, plaintiff's rights should not have been denied to him under the facts as disclosed by the record, merely because in their assertions he attempted to claim more than he was entitled to, or was actually involved in the controversy; or because he undertook to unduly restrict defendant's rights to

accretions not actually involved in this suit, but to which he was entitled.

The assertion of an improper claim by plaintiff in the effort to establish an unquestioned right, ought not operate to defeat his claim for the right.

While plaintiff offered no definite proof as to the amount of river front of the respective fractional quarters owned by himself, and the defendant, at the time the defendant fenced and took possession of the land in suit, compared with the river front at the time the fractional quarters were surveyed by the government, and no actual measurements were made or given, still the plat offered in evidence, which both plaintiff and defendant treated as substantially correct, showing the present and former bed of the river and the accretion that has been made to the original land by reason of the change of the river, together with the testimony offered in explanation of same, all tend to show that if the original north and south land line between the original fractional forties now owned by plaintiff and defendant was extended from its eastern terminus to the river's present western bank, each fractional forty would still retain substantially its just proportion of river front, and if that is true we can not conceive how defendant could claim and hold the strip of land in controversy that lies south of that line and east of the original land in the southeast fractional quarter of said northeast fractional quarter of 17, now owned by plaintiff.

In the very nature of things no absolute rule can be laid down or established, whereby the rights of all coterminous proprietors to accretions formed in front of their respective tracts of land, by the gradual receding of the river under all circumstances and conditions, can be determined.

The effort to maintain for each coterminous proprietor his original water front, or his just proportion of that remaining or added to by the change of the river's course, has of necessity caused the adoption of various plans to meet the varying

changes of altered conditions; but when, as in this case, it is disclosed by the material fact before the court, that the river, while receding from the original fractional quarters, owned now by plaintiff and defendant, still maintained its general course, and that the respective water front of each fractional quarter would be substantially preserved by following out the extended line as above indicated between the original fractional forties, we see no reason why it should not be adopted as a most just and equitable rule. Most certainly no plan should be resorted to that would permit the owner of one quarter to claim as an accretion to it, land immediately in front of and down the course of the stream between the other quarter and the river, so as to cut off entirely that other from his riparian rights, as would be the case, if defendant were permitted to claim and hold the strip of land in controversy.

As this case is to be remanded for a new trial for the reasons above indicated, it might be proper to add here that if upon its second hearing the facts should be discovered by actual measurements taken, that the water frontage of each fractional quarter now owned respectively by plaintiff and defendant can not be substantially maintained as it was when the lands were first surveyed and laid off by the government, by extending the original land line between said quarters to the present bank of the river, then the plan of drawing a line from the original eastern terminus of the dividing line between said fractional quarters to the western bank of the river at right angles with the present general course of the river, should be adopted. By the adoption of either plan as the facts upon a fuller hearing may warrant, a fixed boundary line is ascertained from which the determination of the ownership and right to the possession of the controverted strip is easy of solution.

The case is reversed and remanded to be tried in obedience to the suggestions herein made.

All concur.