EDWARD H. SHERWIN v. FRED BITZER.[1]

February 9, 1906.

Nos. 14,474—(137).

**Boundary.**

When a government lot abuts upon a lake, the shifting water line, and not the meander line, is the boundary of the lot.

**Conveyance—Recession of Lake.**

The transfer of such a lot by number according to the government survey, without words of restriction, conveys all the land which has become a part of the lot by the recession of the lake.

**Description by Metes and Bounds—Quantity.**

A statement in a deed that the land conveyed contains a certain number of acres will not control as against a description by metes and bounds. The statement of quantity will be rejected, if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries.

Action in ejectment in the district court for Wright county. The case was tried before Giddings, J., who directed a verdict in favor of plaintiff for possession of the land and $37.50 damages for the detention thereof. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*W. H. Cutting,* for appellant.
*James C. Tarbox,* for respondent.

ELLIOTT, J.

This is an action of ejectment, in which the plaintiff seeks to recover the possession of certain lands alleged to have been formed by the recession of Pelican Lake, in Wright county. From an order denying a motion for judgment notwithstanding the verdict, the defendant appeals to this court.

On August 15, 1865, the United States, by patent, conveyed to Henry Stokes all of government lots 2 and 3, in section 32, township 121, range 24, containing 68.60 acres. Through various mesne conveyances the land passed to Frank Solden, who by deed dated July 22, 1903, con-

[1]Reported in 106 N. W. 1046.

veyed to the plaintiff the lands embraced in the following description: All that part and portion of lots 2 and 3 of section 32, township 121, range 24, that lie west of a line drawn 5.25 chains east of the west line of said section continued in a straight line and north of a line drawn parallel with the south line of said lot 3, and 27.5 chains south of the north line of said lot 2, containing 3.03 acres according to the United States government survey. When the plaintiff received this deed the defendant was in possession of the land in controversy, but had not secured title by adverse possession.

The action being in ejectment, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of the defendant. In order to understand the issues, it is necessary to refer to the plats which are in evidence. Exhibit A shows the original government survey made in 1855, with the meander line forming the western boundary line of government lots 2 and 3:

EXHIBIT A

Exhibit B is a plat which was made for the purposes of this trial, and which shows the present actual location of the lake with reference to the lots:

EXHIBIT B

The land involved in this action lies between the meander line marked on Exhibit B and the actual lake front, which is 50.25 chains further west, and is marked on the plat as lot A of lot 2 and lot A of lot 3. The plaintiff claims that all the land thus described was conveyed to him by the deed of July 22, 1903. The appellant, the defendant below, contends that the meander line forms the western boundary line of the land described in the deed and that the grantee therein took only the 3.03 acres.

1. The case turns upon the question whether the meander line or the actual lake shore constitutes the western boundary of the plaintiff's land. As a general rule a meander line is not a boundary line. As said by Justice Brewer, in Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 531, 49 L. Ed. 857: "A meander line is not a line of boundary, but one designed to point out the sinuosity of the bank or shore, and a means of ascertaining the quantity of land in the fraction which is to be paid for by the purchaser." See also Hardin v. Jordan, 140 U. S. 371,

11 Sup. Ct. 808, 838, 35 L. Ed. 428; Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68; Railroad Co. v. Schurmeir, 7 Wall. 272, 19 L. Ed. 74.

But there is an exception to this rule. In Security Land & Exp. Co. v. Burns, 87 Minn. 97, 91 N. W. 304, it was said that "the boundaries of fractional lots cannot be indefinitely extended where they appear by the government plat to abut on a body of water which in fact never existed at substantially the place indicated on the plat. In such exceptional cases the supposed meander line will, if consistent with the other calls and distances indicated on the plat, mark the limits of the survey and be held to be the boundary line of the land it delimits."

Unless the evidence brings the case within this exception to the general rule, the actual water front must be held to constitute the western boundary line of the plaintiff's land. Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82), 88 Am. Dec. 59; Id., 7 Wall. 272, 19 L. Ed. 74; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541; Olson v. Thorndike, 76 Minn. 399, 79 N. W. 399; Carr v. Moore, 119 Iowa, 152, 93 N. W. 52, 97 Am. St. Rep. 292.

In Security Land & Exp. Co. v. Burns, supra, it appeared that the government plat in question was fraudulent, and that there never had been a lake on which the lots had abutted as shown on the plat. It was said that, "if there ever had been a lake upon which any part of the several fractional lots abutted, the general rule would apply, and the boundary would be the lake."

It will be presumed that the government surveyor did his duty and marked the lake as it existed at the time of the survey. This presumption is strengthened and made conclusive by the evidence of the only witness who testified as to the past conditions. Mr. Stokes, who first saw the lake about 1857, says that it then had about the same shape as at present, and that the shore line was somewhat farther out in the lake; that at different times, however, the water rose to the place marked by the meander line on the plat; that sometimes it would stay up near this line for three or four years, then go down, and then come up again; that the rise and fall of the water depended upon the amount of rain and snow; that such a rise had occurred three times within his

knowledge; that the land between the lots and lake is in part low and in part hay lands; that a portion of the lands have been used as hay lands for many years; and that to the best of his knowledge no part of the land has been cultivated. At times the water rose to the meander line marked on the plat. It thus appears that there was a lake in front of, and in contact with, government lots 2 and 3 as shown upon the original survey. The case, therefore, does not come within the exception to the general rule as applied in Security Land & Exp. Co. v. Burns, supra, and the actual shore line of the lake must be held to be the western boundary of the plaintiff's lots.

But it is contended that the plaintiff, under the description in the deed of July 22, 1904, acquired title to the 3.03 acres only, because of the statement of quantity therein. The ownership of the abutting lots carried with it the ownership of the land which had been uncovered by the recession of the water. Webber v. Axtell, 94 Minn. 375, 102 N. W. 915; Banks v. Ogden, 2 Wall. 57, 17 L. Ed. 818. Lands formed in this way become a part of the abutting property, and may be conveyed with it or by a separate deed. De Long v. Olsen, 63 Neb. 327, 88 N. W. 512. Solden could, therefore, convey the 3.03 acres and reserve the lands formed by reliction, and it is necessary to determine whether such an intention appears in the description in the deed to the plaintiff. A conveyance of the original lots would carry all the lands to the actual water front, unless the deed contains words of reservation. Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 16 Sup. Ct. 1096, 41 L. Ed. 107; Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872. It is apparent to us that the grantee in this deed did not intend to restrict the effect of the grant to the 3.03 acres. Had the description by metes and bounds made the meander line the western boundary, it might have shown an intention to exclude the lands in controversy; but the description leaves the western boundary undetermined, except by the legal effect of the general language. The deed conveys all that part of lots 2 and 3 which lies west of the designated eastern boundary line. The lots are properly described as being in section 31 of the government survey, and we see no force in the argument that the description could not include lands formed by reliction because located in another section. The

boundary of the lands had been changed by the shifting of the water line; but the deed, which described the lots by number, conveys all the land to the shifting water line. Gorton v. Rice, 153 Mo. 676, 55 S. W. 241.

In Jefferis v. East Omaha Land Co., supra, Justice Blatchford, in commenting on one of the cases cited by appellant in this case, said: "The case of Jones v. Johnston, 18 How. 150, 15 L. Ed. 320, is cited by the defendant as holding that a grantee can acquire by his deed only the land described in it by metes and bounds, and cannot acquire by way of appurtenance land outside of such description. But that case holds that a water line, which is a shifting line and may gradually and imperceptibly change, is just as fixed a boundary in the eye of the law as a permanent object, such as a street or a wall; and it justifies the view announced by the circuit court in its opinion that, where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting line, exactly as it does up to a fixed side line." See Lamb v. Rickets, 11 Ohio, 311; Kraut v. Crawford, 18 Iowa, 549, 87 Am. Dec. 414.

The fact that the deed contains a statement of the quantity of land conveyed is not controlling, when taken in connection with the description by metes and bounds. As said by Mr. Devlin: "In the description of the land it is usual, after the description by metes and bounds, to add a clause stating that the land described contained so many acres. But, unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it cannot control the rest of the description." 2 Devlin, Deeds (3d Ed.) § 1044, and cases there cited; Silver Creek v. Union, 138 Ind. 297, 35 N. E. 125; Gourdin v. Davis, 2 Rich. Law (S. C.) 481, 45 Am. Dec. 745; Gorton v. Rice, 153 Mo. 676, 55 S. W. 241; Seeders v. Shaw, 200 Ill. 93, 65 N. E. 643. In Crill v. Hudson, 71 Ark. 390, 74 S. W. 299, a description as "the fractional quarter of section 18, township 8 south, range 3 west, 10.88 acres," was held to carry an accretion of 148.98 acres.

It follows, from what has been said, that the plaintiff became the owner of all the land in controversy in this action, and the order appealed from is therefore affirmed.

Order affirmed.