MERRILL-STEVENS COMPANY, A CORPORATION, *Appellant,* v.
JAY H. DURKEE, *et al., Appellees.*

1. At common law, all navigable waters and the lands there-
   under were held by the sovereign for the benefit of the whole
   people, and the owner of land abutting on navigable waters
   had no exclusive right in the waters below ordinary high
   water mark or in the lands under the waters, except the
   right of access to and from the navigable waters, and
   rights in the land growing out of accretion or reliction.

2. Upon its admission into the Federal Union by the Act of
   Congress of March 3, 1845, the State of Florida by virtue
   of its sovereignty assumed title to and sovereignty over the
   navigable waters in the State and the lands thereunder. Such
   title is held not for purposes of sale or conversion into other
   values, or for reduction into several or individual ownership,
   but for the use of all the people of the State for purposes
   of navigation, commerce, fishing and other useful purposes
   afforded by the waters.

3. The State may in the interest of the public welfare, grant
   limited rights in portions of the lands under navigable waters
   within its borders, or may permit he use thereof, when the
   rights of the whole people of the State as to navigation and
   other uses of the waters are not materially impaired.

4. The State may fix the exterior lines of a navigable river if
   the rights of the people to the use of the waters and the
   shores of the river are not thereby substantially impaired:
   and rights in the submerged lands not within the reasonably
   fixed exterior lines of the river may be granted by legislative
   authority if such grant does not impair the rights of the
   whole people to the use of the waters for any purpose
   expressed or implied by law.

5. As the rights granted by the riparian Act of 1856, Sections
   643,644, General Statutes of 1906, extend to "all lands covered
   by water lying in front of any tract of land.............lying
   upon any navigable stream or bay of the sea or harbor, as far
   as the edge of the channel," and the right of action given the
   grantees to prevent encroachments extends to "all such sub-
   merged lands in the direction of their lines continued to the

channel," this right of action extends to the space between lines drawn at right angles from the shore line "to the edge of the channel," where the channel runs parallel or practically so with the shore line.

6 The rights granted by the riparian statute of 1856 relate to the space between the shore line and the edge of the channel of navigable streams, bays or harbors, and such rights are not controlled by the direction of lines dividing the uplands.

7. It is incumbent upon one asserting a right to prevent encroachments upon rights granted by the riparian Act of 1856 to show by proper allegations that the encroachments complained of are upon lands in which the complainant under the statute has the exclusive right. Any ambiguity in the allegations will be construed against the complainant in considering a demurrer to the bill of complaint.

8. Where the allegations of a bill of complaint for the removal of alleged encroachments upon rights under the riparian Act of 1856, do not show that the complainant has any rights under the statute in the submerged lands where the obstructions are, or that the encroachments complained of are upon submerged land "in front of" complainant's shore line or between lines running at right angles from the ends of complainant's shore line to the edge of the channel, to which the complainant has a right under the statute, an appropriate demurrer to the bill of complaint should be sustained.

This case was decided by the Court En Banc.

Appealed from the Circuit Court for Duval County.

### STATEMENT.

The following bill of complaint was filed:

"Merrill-Stevens Company, a corporation organized and existing under the laws of the State of Florida, by its solicitors, Cockrell and Cockrell, brings this its bill of complaint against Jay H. Durkee and Cora L. Durkee, each of the County of Duval and State of Florida, and humbly complaining your orator shows as follows:

1. Chester Bisbee, Henry Henderson, Francis Hudnall, and his wife Eliza Hudnall, Jacob Gutterson and his wife Mary A. Gutterson, Lawrence Fatio, David L. Palmer and Darius Ferris, being on to-wit, the 4th day of July, A. D. 1839, seized and possessed of a certain parcel of land on the south bank of the St. Johns River in Duval County, Florida, south of where the City of Jacksonville now stands, said lands being more particularly described on a plat made by one J. A. Coffey, said plat being recorded on, to-wit, the 30th day of May, A. D. 1839, in Deed Book D, page 244 of the former public records of Duval County, Florida, executed a deed by which said land was divided, the part marked on plat as lot four becoming thereby the property of Francis Hudnall, the part marked on said plat as Lot 5, becoming thereby the property of I. Fatio. Said lot four remained the property of said Hudnall up to and until to-wit, the 5th day of December, 1884.

2. On, to-wit, December 27, 1856, the said lot four was lying upon a navigable stream, to-wit, St. Johns River and was owned by a citizen of the United States, to-wit: the said Hudnall, and the State of Florida was then and there the proprietor of all submerged lands and water privileges within the boundaries of said State; that on the said date the State of Florida, by an Act approved on said date, divested itself of all right, title and interest and vested in said Hudnall the full title to the lands covered by water lying in front of said lot four, so far as to the edge of the channel, and gave to the said Hudnall the right and privilege to build wharves into the St. Johns River and to fill up from the shore of the St. Johns River to the channel, and also granted to said Hudnall the right to prevent encrouchments of any other person upon all such submerged lands in the direction of his lines continued to the channel by Bill in Chancery, and that the said grant inured to

the benefit of the said Hudnall, his heirs and assigns; that said Hudnall was then and there the riparian proprietor of said property; that the said Hudnall, on, to-wit, December 5, 1884, conveyed by Warranty Deed to one M. W. Drew a part of said lot four and of the submerged lands in front of said lot four, the said lands so conveyed to the said Drew being more particularly described as follows:

Beginning at a stake on the south side of St. Johns River 24 links north of the center of the mouth of a small branch flowing into said River on grantor's land South 10 degrees East 40.20 chains; North 70 degrees, West 5.73 chains; North 10 degrees West 39.34 chains, thence to the channel of said River on same line, thence east in said channel to a point North 10 degrees west from beginning; thence south 10 degrees East to beginning, except right of way of the Jacksonville and Atlantic R. R. 50 feet from the center of road bed on each side, and fifty feet south of right of said way for a public road, containing 18.25 acres; that the said Deed was on, to-wit, December 6, 1884, duly recorded in Book A. R., page 435 of the former public records of Duval County; that on, to-wit, December 22, 1884, the said Drew by warranty deed conveyed to Jacksonville Marine Railway Company the lands described in the deeds from the said Hudnall to said Drew; that the said Deed was duly recorded on, to-wit, the 26th day of December, 1884, in Book A. R., at page 657 of the former public records of Duval County, Florida; that the said Jacksonville Marine Railway Company went into possession of said property and improved the same by building thereon a ship yard and by erecting a wharf for facilitating the landing and storing of goods, pilings and a marine railway into said St. Johns River upon the submerged lands conveyed as aforesaid and the said Jacksonville Ma-

rine Railway Company used and occupied said premises as a ship yard; that on to-wit, December 1, 1896, the said Jacksonville Marine Railway Company by Warranty Deed conveyed the said lands, with the exception of a few small parcels removed some distance from the St. Johns River, and not involved in this litigation, to Merrill-Stevens Engineering Company; that the said deed was duly recorded on, to-wit, December 26, 1896, in Book 105 at page 616 of the former public records of Duval County, Florida; that the said Merrill-Stevens Engineering Company thereafter had possession of and occupied as a ship yard said land so conveyed and made further improve ments thereon; that thereafter, on, to-wit, December 17, 1903, said Merrill-Stevens Engineering Company by Warranty Deed conveyed to your orator the said lands so conveyed by Jacksonville Marine Railway Company; that said deed was duly recorded in the public records of Duval County, Florida, in Book 19, at page 137; that ever since said time your orator has been in the possession of said property, has occupied the same as a ship yard and has improved same from time to time.

3. On information and belief your orator alleges that the defendants Jay H. Durkee and Cora L. Durkee, are the owners of the land lying next west and contiguous to your orator's said property; that the said property of said Durkee is the said lot 5 hereinbefore described or a part thereof; that the said Durkee's title to said land is based upon the partition deed described in paragraph one of this bill.

4. That a fence divides said lands of your orator south of high water of St. Johns River, and the said land of defendants south of high water mark of St. Johns River; that said fence is on the line that originally divided the lands of Hudnall from the lands of Fatio as described in

paragraph 1 of this bill; that said fence continues on a straight line from high water mark of St. Johns River out into the said River for a long distance, to-wit, 40 feet; that the said fence, both the part above high water mark and the part below high water mark was built many years ago, to-wit, fourteen years or more, and has been in existence continuously along said line ever since it was built.

5. That about two years before the exhibition of this bill of complaint your orator had wooden pilings driven into the bed of St. Johns River along the western line of its said submerged lands; that the said western line is a continuation of the fence line referred to in paragraph four of this bill and is a continuation of the line dividing the lands of your orator south of high water mark of St. Johns River from the lands of defendants south of high water mark of St. Johns River, the said dividing line being the same line that formerly divided the lands of Hudnall and the lands of Fatio mentioned in paragraph one of this Bill; that said pilings your orator intended to use in connection with a marine railway which your orator intended and intends to build out under St. Johns River on its submerged lands hereinbefore described.

6. That the defendant Jay H. Durkee, acting for himself and as agent for the defendant Cora L. Durkee, by his agents and servants has recently pulled up and carried away all of the said pilings of your orator and has driven a large number of pilings into the said submerged lands of your orator; that the said removal of said pilings of your orator and the said driving by said defendant of said pilings into the said submerged lands of your orator constitute encrouchments upon the submerged lands of your orator in the direction of its lands continued to the channel. Your orator is informed and believes that the defendants intend to continue to encrouch upon the said

submerged lands of your orator in the direction of its line continued to the channel by leaving the said pilings upon the said submerged lands of your orator and by using for themselves and to the exclusion of your orator the said pilings and that the said leaving of said pilings driven into your orator's said submerged lands and the said use of said pilings will constitute encrouchments upon the submerged lands of your orator in the direction of its lines continued to the channel; that said conduct has already caused your orator serious injury and unless restrained will cause your orator greater and more serious injury.

The premises considered your orator prays that this Honorable Court issue an interlocutory decree restraining and enjoining the defendants, Jay H. Durkee, and Cora L. Durkee, their servants, employees, agents and all persons acting or claiming to act by, through or under said defendants from leaving the said pilings upon the submerged lands of your orator and from using the said pilings while the same are driven upon the said submerged lands of your orator, and from in any way encrouching upon said submerged lands of your orator; that at a final hearing said injunction be made perpetual; that a decree be entered requiring these defendants to compensate your orator for the damage done it by reason of the pulling up and carrying away of its pilings and by reason of the driving and using of said pilings of defendants and for such other and further damages as may come upon your orator by reason of said encrouchments and that your orator may have such other and further or other or further relief as may consist with equity and the course of this Honorable Court.

And to the ends aforesaid may it please this Honorable Court to grant unto your orator the State's most gracious

Writ of Subpœna commanding the defendants Jay H. Durkee and Cora L. Durkee and each of them to appear on a day therein to be named under a penalty therein to be fixed and answer if they can all and singular the matters and things aforesaid, but not under oath, answer under oath being hereby expressly waived, and to abide by, comply with and conform to the orders and decrees of this Honorable Court, and as in duty bound your orator will ever pray, etc."

A demurrer to the bill of complaint on the following grounds was filed:

"1. That said Bill is without equity.

2. That said Bill sets up no facts which entitle Complainant to any relief in a Court of Equity.

3. That the facts alleged in said Bill show that the Complainant has no right, title or interest in, to or upon the lands upon which these defendants are alleged to have encrouched.

4. That the facts alleged in said Bill of Complaint are vague, indefinite and uncertain.

5. That said Bill of Complaint does not state clearly and definitely any facts that entitle complainant to any relief therein sought."

From an order sustaining this demurrer the complainant appealed and assigns the order as error.

The statute under which the complainant asserts its right is as follows:

"Chapter 791—(No. 17.)

AN ACT to benefit Commerce.

WHEREAS, It is for the benefit of Commerce that wharves be built and Warehouses erected for facilitating

the landing and storage of goods; and whereas, the State being the proprietor of all submerged lands and water privileges, within its boundaries, which prevents the riparian owners from improving their water-lots: Therefore,

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly convened,* That the State of Florida for the considerations above mentioned, divest themselves of all right, title and interest to all lands covered by water, lying in front of any tract of land owned by a citizen of the United States, or by the United States, for public purposes, lying upon any navigable stream, or Bay of the Sea, or Harbor, as far as to the edge of the channel, and hereby vest the full title to the same in and unto the riparian proprietors, giving them the full right and privilege to build wharves into streams or waters of the Bay or Harbor as far as may be necessary to effect the purposes described, and to fill up from the shore, bank or beach, as far as may be desired, not obstructing the channel, but leaving full space for the requirements of Commerce, and upon lands so filled in, to erect warehouses or other buildings, and also the right to prevent encrouchments of any other person, upon all such submerged land in the direction of their lines continued to the channel, by bill in chancery, or at law, and to have and maintain action of trespass in any Court of competent jurisdiction in the State, for any interference with such property; also confirming to the riparian proprietors all improvements which may have heretofore been made upon submerged lands, for the purposes within mentioned.

Sec. 2. *Be it further enacted,* That nothing in this act contained shall be so construed as to release the title of the State of Florida, or any of its grantees, to any of the

swamp or overflowed lands within the limits of the same, but the grant herein contained shall be limited to those persons and body corporate owning lands actually bounded by, and extending to low water mark, on such navigable streams, Bays and Harbors.

(Passed the House of Representatives December 26, 1856. Passed the Senate, December 27, 1856. Approved December 27, 1856." See Sections 643 and 644 General Statutes of 1906.

*Cockrell & Cockrell,* for Appellant;

*E. J. L'Engle,* for Appellees.

WHITFIELD, C. J., (*after stating the facts.*)—The main question to be determined is whether the allegations of the bill of complaint that are admitted by the demurrer show the encroachments complained of to be upon the exclusive riparian rights of the complainant in the lands under the waters of the navigable stream.

At common law, all navigable waters and the lands thereunder were held by the sovereign for the benefit of the whole people, and the owner of land abutting on navigable waters had no exclusive right in the waters below ordinary high water mark or in the lands under the waters, except the right of access to and from the navigable waters, and rights in the land growing out of accretion or reliction.

Upon its admission into the Federal Union by Act of Congress of March 3rd, 1845, the State of Florida by virtue of its sovereignty assumed title to and sovereignty over the navigable waters in the State and the lands thereunder. Such title is held not for purposes of sale or conversion into other values, or for reduction into several or

individual ownership, but for the use of all the people of the State for purposes of navigation, commerce, fishing and other useful purposes afforded by the waters. The State may in the interest of the public welfare, grant limited rights in portions of the lands under navigable waters within its borders, or may permit the use thereof, when the rights of the whole people of the State as to navigation and other uses of the waters are not materially impaired. The rights of the people of the State in the navigable waters and the lands thereunder including the shores or spaces between ordinary high and low water marks, are designed for the public welfare, and the State may regulate such rights and the uses of the waters and the lands thereunder for the benefit of the whole people of the State as circumstances may demand, subject of course to the powers of Congress in the premises. For the purpose of aiding navigation or commerce, or of en-couraging new industries and the development of natural or artificial resources in the interest of all the people, the State may grant reasonable and limited rights and privi-leges to individuals in the use of lands under navigable waters in the State; but such privileges should not unrea-sonably impair the rights of the whole people of the State in the use of the waters or the lands thereunder for the purposes implied by law, nor relieve the State of the control and regulation of the uses afforded by the lands and the waters thereon. The State may fix the exterior lines of a navigable river if the rights of the people to the use of the waters and the shores of the river are not there-by substantially impaired; and rights in the submerged lands not within the reasonably fixed exterior lines of the river may be granted by legislative authority if such grant does not impair the rights of the whole people to the use of the waters for any purpose expressed or implied by law.

State *ex rel.* Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353; Ferry Pass Inspectors' & Shipper's Ass'n. v. White River Inspectors' & Shippers' Ass'n., 57 Fla. 399, 48 South. Rep. 643, 22 L. R. A. (N. S.) 345.

By the statute set out in the statement, the State of Florida in consideration of the benefits to accrue to commerce, vested in the riparian owner a qualified fee to "all lands covered by water, lying in front of any tract of land owned by a citizen of the United States, or by the United States for public purposes, lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel, * * * giving them the full right and privilege to build wharves into streams or waters of the bay or harbor as far as may be necessary to effect the purposes described, and to fill up from the shore, bank or beach as far as may be desired, not obstructing the channel, but leaving full space for the requirements of commerce, and upon lands so filled in, to erect warehouses or other buildings, and also the right to prevent encroachments of any other person upon all such submerged lands in the direction of their lines continued to the channel. by bill in chancery, or at law, and to have and maintain action of trespass in any court of competent jurisdiction in the State, for interference with such property." State v. Black River Phosphate Co., 32 Fla. 82, 13 South. Rep. 640, 21 L. R. A. 189.

The proprietary right of the riparian owner of the classes named in the statute extends to "all lands covered by water lying in front of any tract of land * * lying upon any navigable stream or bay of the sea or harbor, as far as to the edge of the channel." The right of action given to prevent encroachments extends to "all such submerged lands in the direction of their lines continued to the channel."

As the grant is of the use of "all lands covered by water, *lying in front of*" the particular classes of riparian land, "as far as to the edge of the channel," the right given to prevent encroachments upon "such submerged lands in the direction of their lines continued to the channel" must mean the right to prevent the encroachments upon the land granted "in front of" the shore line, and directly between the shore line and the channel. "In the direction of their lines continued to the channel" means the space between lines drawn at right angles from the shore line "to the edge of the channel."

This is necessarily so as to bodies of water and the channels therein that run parallel or practically so with the shore line, as is apparently the case here. The right granted by the statute is not to individuals but it is a general grant of right to all who come within the designated classes, the purpose of the grant being that each member of the designated classes may have the same exclusive rights in front of the shore line of his own lands, but that no one may have by virtue of the grant a right of the kind granted, in submerged lands in front of the shore line of other riparian owners. Delaware, Lackawanna and Western R. R. Co. v. Hannon, 37 N. J. L. 276; Groner v. Foster, 94 Va. 650, 27 S. E. Rep. 493; Wood v. Appal, 63 Pa. St. 210; Clark v. Campau, 19 Mich. 325; Newell v. Leathers, 50 La. Ann. 162, 23 South. Rep. 243; Gorton v. Rice, 153 Mo. 676, 55 S. W. Rep. 241; 3 Farnham on Waters, § 841 *et seq.*

The rights granted by the riparian statute of 1856 relate to the space between the shore line and the edge of the channel of navigable streams, bays or harbors, and such rights are not controlled by the direction of lines dividing the uplands.

It is encumbent upon the complainant to show by

36—Vol. 62

proper allegations that the encroachments complained of, are upon the lands in which the complainant under the statute has the exclusive right. Any ambiguity in allegations will be construed against the complainant in considering the demurrer.

The bill of complaint alleged that the lands are on the south side of St. Johns River and that a fence on the line between the lands of complainant and defendants, "continues on a straight line from high water mark of St. Johns River out into the said River for a long distance, to-wit: 40 feet;" that complainant "had wooden pilings driven into the bed of St. Johns River along the western line of its said submerged lands; that said western line is a continuation of the fence line referred to   *   *   and is a continuation of the line dividing the lands of complainant south of high water mark of St. Johns River from the lands of defendants south of high water mark of St. Johns River;" that the defendants have "recently pulled up and carried away all of the said pilings   * and has driven a large number of pilings into the said submerged lands of complainant; that the said removal of said pilings of complainant and the said driving by said defendant of said pilings into the said submerged lands of complainant constitute encroachments upon the submerged lands of complainant in the direction of its lines continued to the channel."

The line between the uplands of complainant and the defendants apparently does not approach the navigable river at right angles or nearly so, but the description of the land line indicates that it approaches the river at an angle of 10 degrees west of north, while the river apparently runs approximately east and west in front of the land.

It does not appear from the allegations of the bill of

complaint that the complainant has any rights in the submerged lands "in front of" the lands of the defendants that are included within lines run at right angles from each end of the defendants' shore line "to the edge of the channel." Nor does it clearly appear that the encroachments complained of are upon submerged land "in front of" complainant's shore line or between lines running at right angles from the ends of complainant's shore line to the edge of the channel.

Even if the conveyance to the complainant in terms covers submerged land in front of the defendants' land between lines running at right angles from the ends of the defendants' shore line to the edge of the channel of the navigable river, it does not appear that the complainant's predecessors in title had any right to make such a conveyance. The pleadings do not show a possessory right of the complainant in the submerged lands between the defendants' shore line and the edge of the channel of the navigable river.

As the complainant does not make it clearly to appear that the encroachment complained of is upon lands as to which it has the right to the relief sought, the decree appealed from is affirmed.

TAYLOR, SHACKLEFORD and HOCKER, J. J., concur;

COCKRELL, J., took no part.