[Sac. No. 1092. Department One.—March 26, 1903.]

ELIZABETH KIRBY et al., Respondents, v. E. E. POTTER
et al., Appellants.

GOVERNMENT SURVEY—NON-NAVIGABLE STREAM AS BOUNDARY—CENTER
OF STREAM—MEANDER-LINE.—Where land on one side of a non-
navigable stream is a Mexican grant having the river as its boundary,
land surveyed by the government on the other side of the stream is
bounded by the center of the stream, and not by the meander-line
indicated by the field-notes of the survey along the bank thereof.

ID.—LOCATION OF MINING-CLAIM—PRIVATE LAND.—There can be no
location of a mining-claim on private land the title to which has
passed from the government.

APPEAL from a judgment of the Superior Court of Butte
County. John C. Gray, Judge.

The facts are stated in the opinion.

Stratton & Kaufman, for Appellants.

J. H. McGee, for Respondents.

GRAY, C.—Appeal by defendants from judgment for
plaintiffs. Action to quiet title. The plaintiffs allege, and
the appellants seem to concede the truth of the allegation,
that said plaintiffs are the owners of the north half of the
northwest quarter, lot 1 of the southwest quarter of northwest
quarter, lot 2 of the southeast quarter of the northwest quar-
ter, all in section 10, and lot 1 of the northeast quarter of
section 9, all in township 18 north, range 3 east, M. D. M.,
according to the government survey thereof. This land lies
adjacent to the Feather River. That stream curves around
the western and southern sides of the tract, and the point in
dispute is whether the land as above described is bounded by
the stream and extends to the thread thereof, or is it bounded
on the south and west by the meander-line of said stream run,
as indicated by the field-notes of the government survey,
along the bank thereof. The trial court determined that the
stream was the boundary and that the land described by the
government subdivisions extended to its thread, and this we
think was clearly correct.

To be sure, the field-notes showed that the meander-line ran

down the bank of the stream, and this was no doubt the only southern and western line of the land actually run in the field; but in determining where the true line is we must take into account the laws governing government surveys. In volume I of the Revised Statutes of the United States, at page 442, sections 2396-97, we find a provision governing government surveys, to the effect that lines intended as boundaries, but which were not actually run and marked, must be ascertained by running straight lines from the established corners to the opposite corresponding corners; but where no such opposite corresponding corners have been or can be fixed, the boundary lines are required to be ascertained by running from the established corners due north and south or east and west, as the case may be, to the watercourse, Indian boundary line, etc. This provision of the law is construed in *Railroad Co.* v. *Schurmeier,* 7 Wall. 272, and it is there said: "Meander-lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as a means of ascertaining the quantity of the land in the fraction subject to the sale, and which is to be paid for by the purchaser," and it is added that "proprietors bordering on streams not navigable, unless restricted by the terms of their grant, hold to the center of the stream." The government plat of the land in question is not in evidence, but there is a plat made by a "state license land surveyor," indicating the lines of the government surveys as they were run in the field, and from this plat it is plain to be seen that, following the rules of government surveys of this character already referred to, the Feather River constitutes one boundary in lot 1 in said section 9, as well as of lots 1 and 2 in section 10. The meander-line was originally run as near to the margin of the river as practicable, and we have no doubt that the official plat of the government's survey delineates the river as the western and southern boundaries of the said lots. This is a proper inference to be drawn from the evidence actually before us, construed in the light of the rules of law controlling government surveys. It is conceded that the river is not navigable at the point in question; and under ordinary circumstances the lines of the government survey would have extended across the stream, but this

was not done, because the lands on the other side of the stream were embraced within the previous grant, known as the Fernandez Rancho grant, with the river as its eastern boundary. It follows, then, that the true boundary of the lots is the thread of the stream.

The proposition finds further illustration in the very recent decision of this court in *Hendricks* v. *Feather River Canal Co., ante*, p. 423.

There is nothing in *Freeman* v. *Bellegrade*, 108 Cal. 185,[1] inconsistent with the foregoing. That case deals exclusively with a private grant deed of a portion of a larger tract owned by the grantor, and the rules and laws controlling government surveys were in no way involved in that case. The land was there conveyed by metes and bounds, while here the plaintiffs were the owners of the land as described by the government subdivisions.

It is also urged that the court erred in not permitting the defendant to show that he had complied with the law governing the location of mineral-land claims, and had actually located and owned such a claim covering the bed of the Feather River and embracing all the land claimed by plaintiff between the said meander-line and the thread of the stream. All these alleged acts of defendant in locating a mineral claim were had and taken, as we understand, after the title to the land had passed out of the government to the plaintiffs' predecessor in title, and, as we have already seen, the land so conveyed and patented by the government extended to the thread of the stream; and, as it further appears that there was no reservation of minerals in the patent, the acts of defendants in trying to perfect a mineral claim were entirely immaterial so far as the land involved in this controversy is concerned, for there was no title left in the government to be acquired by mineral-land claimants. The trial court did not err in excluding the offered evidence.

We advise that the judgment be affirmed.

Smith, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Van Dyke, J., Angellotti, J., Shaw, J.

[1] 49 Am. St. Rep. 76.