[No. 1786]

RENO BREWING COMPANY (INCORPORATED), RESPONDENT,
v. IRA PACKARD AND GEO. F. WELLS, APPELLANTS.

1. BOUNDARIES—MEANDERED WATERS.
    A patent of government lots located on a river conveys to the river,
    and not merely to the meander line.

2. EVIDENCE—RECORDS.
    The record of a patent from the United States is admissible in
    evidence, Comp. Laws, 324, making special provisions for recording
    such patents and the use of such records as evidence.

3. ADVERSE POSSESSION.
    Color of title in plaintiff and its payment of the taxes on the land
    make it impossible, under Comp. Laws, 3709, for title by adverse pos-
    session to be acquired by defendant, whose possession was subordi-
    nate even to that of one who occupied the premises in subordination
    to the title of plaintiff, and virtually as its tenant.

ON PETITION FOR REHEARING

1. EJECTMENT—TITLE TO SUPPORT ACTION—RECOGNITION OF PLAINTIFF'S TITLE.
    In ejectment, under civil practice act, sec. 256, et seq. (Comp. Laws,
    3351, et seq.), authorizing an action by any person in possession by
    himself or tenant against one claiming an interest adverse to him, to
    determine the adverse interest, etc., that defendant relied on a deed
    from a third person, who acknowledged the paramount title in plain-
    tiff, and that his possession was that of a tenant, and that defendant
    had no interest other than that obtained from the deed, authorizes a
    judgment for plaintiff.

2. APPEAL AND ERROR—HARMLESS ERROR—DENIAL OF NONSUIT—DEFECTS
    SUPPLIED SUBSEQUENTLY.
    Where defendant, after the court refused a nonsuit, introduced evi-
    dence which supplied defects in plaintiff's case, the appellate court
    will not reverse the judgment for plaintiff.

APPEAL from the District Court of the Second Judicial Dis-
trict of the State of Nevada, Washoe County; *W. H. A. Pike*,
Judge.

Action by the Reno Brewing Company against Ira Packard
and another. From a judgment for plaintiff, defendant
George F. Wells appeals. **Affirmed.** Petition for rehearing.
**Denied.**

The facts sufficiently appear in the opinion.

*J. B. Dixon*, for Appellant:

I. It is universally held that the plaintiff in ejectment
must recover upon the strength of his own title, and will not

be permitted to rely on the weakness of his adversary. The reason for this rule is that the person in possession, or the *prima facie* owner of the property, ought not to be required to give up the possession, however weak his title is, until the true owner establishes his title. The right of defendant to set up a subsisting or outstanding title in a stranger rests on the same foundation. It is a general rule that the plaintiff must prove title in himself; that he had a right to the immediate possession of the premises at the commencement of the action. The rule most broadly stated is that the plaintiff in ejectment must prove a regular chain of title to some grantor in possession, or the government. Where plaintiff relies on documentary proof of title, a complete and perfect title must be shown; and if a material link in the chain be wanting, he fails. Plaintiff must show an ouster by defendant. (3 Elliot, Ev. sec. 2039, and cases cited; 2 Greenl. Ev. secs. 303, 304, 331; 15 Cyc. 15, 39, 117; Abbott, Trial Ev. 2d ed. 872, 873.)

II. There is no statutory or other provision for the proof of a patent by the record. Comp. Laws, 2669, provides only for instruments that are "acknowledged, certified and recorded." The patent in this case was neither acknowledged nor certified.

*James T. Boyd* and *A. N. Salisbury*, for Respondent:

I. The defendant Wells seemed to think that the land lying between the meander line on the southern part of lots 1, 2, 3, and 4 and the river was open public land subject to location, and in his testimony he asserted that he thought the land lying between the meander line and the river was subject to location the same as any other land. To secure title from the government upon what he thought was public land he located two mill sites. Packard was a mere occupier of the premises, as a favor from Samuel Brown, and occupied the premises solely on consideration that he would take care of them. He continued such occupancy under the Reno Brewing Company. At best he was only a tenant at will. (Washburn, Real Property, sec. 765.) The relation between Brown and Packard was that of landlord and tenant.

II. The original entry of Packard was unlawful, but his

agreement with Brown to take care of the property was a recognition of Brown's superior title. Brown's death terminated the agreement between Brown and Packard, and after that Packard merely held by sufferance. (Washburn, Real Property, sec. 825, *et seq.*) Packard's agreement with the brewing company, dated January 26th, would have given him a right to have lived upon the premises until May, 1907, and created the relationship of landlord and tenant between him and the brewing company. This relationship was terminated by Packard when he attempted to assert a right adverse to that of his landlord, and entitled the landlord to the right of immediate possession. (Washburn, Real Property, sec. 773.) Packard, while in the possession of the property, was estopped from denying the title of the plaintiff or its grantors. No matter how defective the landlord's title might be, the tenant must surrender the possession to the landlord, and to him only can a valid possession be given. He cannot assign nor convey an estate at will. He cannot assert a paramount title in himself until he has first surrendered possession to his landlord. (18 Am. & Eng. Ency. Law, 411, 413, 414; Washburn, sec. 774.)

III. There are five essential elements necessary to constitute an effective adverse possession: (1) the possession must be hostile, under a claim of rights; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive, and (5) it must be continuous. If any of these constituents are wanting, the possession will effect a bar of the legal title. (1 Am. & Eng. Ency. Law, 795, and authorities therein cited.) The actual and peaceable possession of land does not necessarily make the possession adverse to the true owner. It depends upon the intention of, and the character of the claim asserted by, the party in possession. (*McDonald* v. *Fox*, 20 Nev. 364.) An adverse and hostile possession is one held for the possessor as distinguished from one held in subordination to the rights of another; in other words, it is a possession inconsistent with the possession or the right of possession by another. (1 Am. & Eng. Ency. Law, 789.) The intention with which possession is taken or held is regarded as a controlling factor in determining whether or not it is adverse.

There must be an intention to claim the title as owner and in derogation of the rights of the true owner. (*McDonald* v. *Fox*, 20 Nev. 364; *Thompson* v. *Pioche*, 44 Cal. 509; *Abernathie* v. *Con. Virginia M. Co.*, 16 Nev. 261.)

IV.   The appellant does not claim any title by reason of a purchaser without notice, nor does he claim any title except such as he acquired by reason of his residence under the permission from Packard. The work that he and Packard did on the place was simply complying with the agreement originally entered into with Samuel Brown. (Devlin on Deeds, sec. 465, *et seq.*, and cases cited therein.)

By the Court, NORCROSS, C. J.:

This is an action commenced by the above-named respondent against the above-named defendants to have said defendants ejected from certain premises, comprising about five and three-quarters acres of land situated upon the north bank of the Truckee River, and between said bank and the meander line of said river, in section 12, township 19 north, range 19 east, in the County of Washoe.

The defendant I. Packard appeared in the action, and filed a disclaimer of any interest in the premises in controversy, and the case as to him was dismissed. The defendant Wells filed an answer to the plaintiff's complaint, in which he set up a right of possession in himself to the land in controversy. He alleged in his answer that he had acquired title to the premises as against the plaintiff and its grantors by adverse possession; further, that the land lying between the meander line and the north bank of the Truckee River was public land of the United States, upon which he had located two mill sites, and was then the owner and holder of such lands by virtue of said mill sites. Upon the part of the plaintiff there was offered in evidence the record copy of a patent of the United States to one Peter Countryman, conveying lots numbered 1, 2, 3, and 4 of section 12, township 19 north, range 19 east, dated February 5, 1869. Plaintiff claims title to the land in question under and by virtue of this patent, and by mesne conveyances from the said Peter Countryman and his grantees to the plaintiff. The Truckee River crossing, as it does, the

north half of said section 12, the land, when surveyed, was designated as lots, instead of the ordinary subdivisions, with the exception of the northwest quarter of the northwest quarter of said section.

The defendant's claim of right of possession to the land in controversy by virtue of his mill-site locations may be determined by ascertaining what lands passed from the government under and by virtue of the Countryman patent. If the southerly boundary line of said lots 1, 2, 3, and 4 is the north bank of the Truckee River at low-water mark, then the defendant could not, under any circumstances, have made a valid location of a mill site, for the reason that the land in question had ceased to be a part of the public domain. Counsel for defendant and appellant, however, contends that the meander line of said Truckee River is the boundary of the land conveyed by the government under the patent, and that the land between the meander line and the river remained a part of the public domain. That counsel is in error in this contention is well settled, we think, by the decisions of this and other state courts, as well as by the federal courts.

In *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428, the Supreme Court of the United States by Bradley, J., said: "The meander lines, run along or near the margin of such waters, are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held, both by the federal and state courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered, and that the waters themselves constitute the real boundary. (*Railroad Co.* v. *Schurmeir*, 7 Wall. 272, 19 L. Ed. 74; *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872; *Middleton* v. *Pritchard*, 3 Scam. 510, 38 Am. Dec. 112; *Canal Trustees* v. *Haven*, 5 Gilman, 548, 558; *Houck* v. *Yates*, 82 Ill. 179; *Fuller* v. *Dauphin*, 124 Ill. 542, 16 N. E. 917, 7 Am. St. Rep. 388; *Boorman* v. *Sunnuchs*, 42 Wis. 233, 235; *Pere Marquette Boom Co.* v. *Adams*, 44 Mich. 403, 6 N. W. 857; *Clute* v. *Fisher*, 65 Mich. 48, 31 N. W. 614; *Ridgway* v. *Ludlow*, 58

Ind. 248; *Kraut* v. *Crawford*, 18 Iowa, 549, 87 Am. Dec. 414; *Forsyth* v. *Smale*, 7 Biss. 201, Fed. Cas. No. 4,950; Rev. St. secs. 2395, 2396.)    Mr. Justice Clifford in the case first cited says: 'Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser.    In preparing the official plat from the field notes the meander line is represented as the border line of the stream, and shows to a demonstration that the water course, and not the meander line, as actually run on the land, is the boundary.' "

In *Shoemaker* v. *Hatch*, 13 Nev. 261, this court, in an opinion by Beatty, J., considering a question involving the land on the south bank of the Truckee River, and immediately opposite that involved in this suit, held that "the water course, and not the meander line by which it is surveyed, is the boundary of the fractional subdivisions"—citing *Railroad Co.* v. *Schurmeir*, *supra*.    The case of *Hendricks* v. *Feather River Canal Co.*, 138 Cal. 423, 71 Pac. 496, presented a question practically identical with that here involved.    Respondents had located mining claims between the meander line and the bank of the river, upon the theory that such land was public domain.    The courts held the locations void, and affirmed the judgment quieting title in the lot owners, for the reason that the lots were bounded by the river and not by the meander line.

See, also, *Kirby* v. *Potter*, 138 Cal. 688, 72 Pac. 338; *Turner* v. *Parker*, 14 Or. 340, 12 Pac. 495; *Schurmeir* v. *Railroad Co.*, 10 Minn. 82 (Gil. 59); 88 Am. Dec. 59.

The defendant's claim to the right of possession of the premises in controversy by reason of adverse possession is little, if any, stronger than his claim to said land by virtue of his mill-site locations.    The record discloses that one Samuel Brown came into possession of lots 1, 2, 3, and 4 of said section 12 by virtue of a written conveyance made in the year 1876, and recorded in the records of Washoe County.    From that time, until his death on the 26th day of January, 1899,

the said Samuel Brown claimed and held said lots by virtue of such conveyance. By decree of the district court in and Washoe County the said property was distributed to the heirs at law of said Brown. On the 29th day of January, 1899, all of the said heirs at law of Samuel Brown, deceased, made and executed a power of attorney to Sardis Summerfield, of Reno, Nevada, empowering him to sell and transfer the interests of said heirs and distributees in said lots of land, which power of attorney was duly recorded. On the 19th day of May, 1906, a tract of land described by metes and bounds, and comprising a portion of said lots 1, 2, 3, and 4, and inclusive of the land in controversy in this action, was conveyed by the said heirs and distributees of Samuel Brown to the plaintiff herein, and duly executed by the said heirs through the said attorney in fact, Sardis Summerfield.

Ever since said deed last mentioned, and at the time of bringing this action against said defendants, the plaintiff has been in the possession, and claiming the right of possession, under and by virtue of said last-mentioned deed. The record discloses that during the time the said Sardis Summerfield held the power of attorney of the said heirs and distributees of Samuel Brown, deceased, he paid the taxes for them upon all of the land distributed to them, as aforesaid, which included the land in controversy. While the defendant's answer alleges that defendant had paid all the taxes assessed against the land in controversy, he admitted upon the trial that he had never paid any taxes thereon, and made such allegation solely upon the theory that said land belonged to the government, and was not assessed. The record discloses that about twelve years prior to the institution of this suit the defendant Packard entered into the possession of a vacant cabin upon the land in controversy, and remained thereon, occupying the same as his home, until a short time prior to the institution of this action. It clearly appears, however, that Packard never at any time asserted any ownership to the land in question, but that he recognized the ownership thereof in the said Samuel Brown up until the time of his death; that he thereafter recognized that the said Sardis Summerfield exercised control and supervision over the same; that after

the plaintiff purchased the land, he recognized plaintiff's title thereto in writing.

Shortly before the institution of this action, the said Packard made and executed a deed of the premises in controversy to the defendant Wells, but it is clear from the facts stated that the defendant Wells acquired no title by virtue of this deed, for Packard had none to convey. The record discloses that the defendant Wells first entered upon the land in controversy in September or October of 1900, and has since that time occupied a cabin upon said premises, which cabin was upon the property prior to his entry thereon; that he entered and began to live in said cabin by the consent of one Thomas Donnelly, who was living thereon by the consent of said Packard, who in turn was remaining on the property by the consent and sufferance of the said Samuel Brown and his successors in interest; that the defendant Wells did not openly assert any claim or right of possession to the property in controversy until after the plaintiff had purchased the land from the heirs of Samuel Brown, deceased.

We think it manifest from the evidence that the defendant Wells did not conclude to assert any claim or ownership to the property until he had concluded in his own mind that the land between the meander line and the river was public domain, and that he concluded then to assert rights of adverse possession because of this supposed discovery upon his part. Section 3709, Compiled Laws of Nevada, provides: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time prescribed by law; and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it shall appear: First, that it has been protected by a substantial inclosure; or, second, that it has been cultivated or improved in accordance with the usual and ordinary methods of husbandry; provided, that in no case shall adverse possession be considered established unless it be shown, in addition to the above requirements, that the land has been occupied and claimed for the period of five years, continuously, and that the party or per-

sons, their predecessors and grantors, have paid all taxes, state, county, and municipal, which may have been levied and assessed against said land for the period above mentioned."

Counsel for appellant assigns a number of errors in the admission of certain of the plaintiff's muniments of title. The first of these assignments goes to the admissibility of the record of the patent from the United States to Peter Countryman. He asserts that such record was not admissible under the provisions of Comp. Laws, 2669. We need not consider whether it was admissible under the provisions of this section, as section 324 of the Compiled Laws makes specific provisions for the recording of such patents and the use of such record as evidence.

We need not go into an examination of the numerous objections made to the other instruments admitted, for we think they were admissible for the purpose of showing color of title in the plaintiff and its grantors at the very least. Color of title in the plaintiff and its grantors, taken together with the fact that the taxes upon the land were paid by the plaintiff's grantors, and that the defendant Packard occupied the premises in subordination to such title, and virtually as the tenant of the plaintiff and its grantors and predecessors in interest, made it impossible for the defendant Wells to acquire any adverse title, when it appears undisputed that the possession of the defendant Wells was subordinate even to that of Packard.

The judgment and order of the lower court are affirmed.

## On Petition for Rehearing

By the Court, Norcross, C. J.:

Counsel for the appellant has filed a lengthy petition for a rehearing, in which he urges that this court should have passed upon the numerous objections and exceptions to the introduction in evidence of the plaintiff's record title, which objections and exceptions were learnedly and elaborately argued in more than thirty pages of brief. Even if we were to hold, with counsel for appellant, that the proper foundation was not laid for the introduction of the record of the various instruments constituting the plaintiff's paper title, and for

that and other reasons assigned the court erred in admitting such record, nevertheless the judgment should be affirmed; hence, it ·would serve no purpose to determine whether the trial court erred in this respect.

Upon the whole case, as finally submitted to the court, it is clear that plaintiff was entitled to judgment. The appellant Wells, in order to establish his alleged title by adverse possession, was obliged to rely upon the possession of the defendant Packard. He offered in evidence a deed from Packard, dated March 2, 1907, to the premises in controversy. Packard, at the time of executing this deed, had no pretense of any claim upon the property, other than possibly that of a tenant. His testimony upon the trial was to the effect that he had recognized title first in Samuel Brown, secondly in the heirs of Samuel Brown, the immediate grantors of the respondent, and lastly in the respondent. On January 25, 1907, Packard signed and delivered to respondent the following writing: "Reno, Nevada, Jan. 25th, 1907. I, Ira Packard, for the priveledge [privilege] of occupying a certain cabin as a place of abode which is owned by the Reno Brewing Co., Inc., of Reno, Nevada, and is situated along the bank of the Truckee River and lying across the track of the Southern Pacific Railway Company, and immediately south of the plant of said Reno Brewing Co., Inc., do agree to look after said property and to vacate the same on the 1st day of May, 1907: Ira Packard."

Subsequently Packard presented a claim to the respondent in the sum of $1,200 for his services in taking care of the premises for six or seven years. The fact that Packard is shown to have acknowledged the paramount title in the respondent, and that his possession was at the most only that of a tenant, and that Wells had no interest other than that obtained through Packard, was alone sufficient to entitle the plaintiff to recover. While proceedings of this character are commonly referred to as actions in ejectment, the same as an action for claim and delivery of personal property is usually referred to as an action in replevin, nevertheless it should be borne in mind that the action of ejectment, as recognized at common law, has been modified by statute in this state.

(Civil Practice Act, sec. 256, *et seq.*; Comp. Laws, 3351, *et seq.*; *Alford* v. *Dewin*, 1 Nev. 207.)

We need not consider, we think, the contention of counsel for appellant that the trial court should have sustained the motion for a nonsuit. Whatever, if anything, was lacking to establish plaintiff's right of recovery at the time it rested its case, was certainly furnished by the testimony of the defendants. Where such a condition exists, the appellate court would not be warranted in reversing a judgment. (*Power* v. *Stocking*, 26 Mont. 478, 68 Pac. 857; *City* v. *Lewis*, 34 Wash. 413, 75 Pac. 982.)

The petition for a rehearing is denied.