[No. 15467. Department Two. January 13, 1920.]

# Stener O. Rue, *Respondent,* v. Oregon & Washington Railroad Company, *Appellant.*[1]

Public Lands (9)—Survey—Meander Lines. The government's original plat and meander of a stream constituting the boundary between two lots cannot be impeached or contradicted by the testimony of a surveyor who made a visual survey without actual measurements, as a nonexpert.

Boundaries (1)—Natural Monuments. Where the government plat and meander of a stream constituting the boundary between two lots was not founded on gross negligence or fraud, and the stream actually touched both lots and was permanent and visible, it was a natural monument and controlling.

Quieting Title (20, 25)—Form of Remedy—Title. A suit to quiet title to a lot described by metes and bounds according to lines shown on the plat, involving an issue as to the boundaries, is a possessory action under Rem. Code, § 785, in which the superior title, whether legal or equitable, prevails.

Public Lands (9)—Survey—Meanders. The government "meanders" of a stream between two government lots are not run as boundaries but only to ascertain the acreage of the tracts, and the stream constitutes the real boundary, regardless of the area.

Public Lands (9)—Boundaries (13)—Meanders—Evidence. The government meander of a stream constituting the boundary between two lots is not shown to be so grossly inaccurate as to amount to a fraud by the nonexpert testimony of a surveyor who, from a visual survey, stated that there was a discrepancy in the acreage called for of about forty acres or half of the tract.

Boundaries (12)—Evidence—Admissibility. Upon an issue as to the true boundaries of a tract, tax receipts showing the acreage paid on, are admissible; since the taxing officers accept the acreage shown by the government plat, and owners are not bound for taxing purposes by the acreage of their title deeds.

Appeal from a judgment of the superior court for Clallam county, Ralston, J., entered December 17, 1918, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

[1] Reported in 186 Pac. 1074.

*Bogle, Merritt & Bogle,* for appellant.

*Rose & Lewis,* for respondent.

HOLCOMB, C. J.—Respondent sued to quiet title to lot 3, section 22, township 28 north, of range 15 west, W. M., describing the lot by metes and bounds according to the lines and water boundary shown on the government plat. Appellant answered that it claimed no interest in any land in section 22 other than as thereinafter affirmatively alleged, and then pleaded that it was the owner of lots 1 and 2 in section 22; not alleging anything as to the boundary of the lots, but setting up its ownership according to the technical description, according to the survey and plat, and deraigning its title from the United States, and praying that its title be quieted in lots 1 and 2 and the accretions thereto. In reply, respondent, as to the affirmative defense alleged in appellant's answer, denied that the description of the property therein embraced any part of the real property described in respondent's complaint. At the trial appellant claimed and attempted to prove that there was error in the survey and plat in the meandering and location of the Dickodochteder or Dickey river; that, by reason of this error, the erroneous meander line was the true western boundary of its lot 2, and claimed that lot 2 in fact extended across and beyond the river (Dickey), so that the river, instead of flowing along the western boundary of lot 2, would flow through the lot and put respondent's lot almost entirely away from the stream. Respondent shows title by mesne conveyances of lot 3 from certain lands patented by the United States to one Erickson, of date November 23, 1891. The patent covered 163.95 acres, according to the official plat thereof, but the only portion involved here is lot 3. The plat of the lands on file and returned to the United States

land office recites the acreage of lot 3 as being 39.50 acres.

Appellant shows title by mesne conveyances of lot 2, section 22, back to a patent dated August 12, 1892, to Sarah C. Pullen. The plat of the land on file and returned to the general land office shows the acreage of lot 2 to be 35 acres. There are no accretions involved in the case.

The situation is that, if the eastern boundary of respondent's lot 3 be fixed easterly of the line shown as the boundary line on the plat, or the meander line of the river as shown on the plat, then respondent's acreage will be increased and appellant's acreage will be decreased proportionately.

While the original government plat shows the meander line of what was then called the Dickodoch-teder or Dickey river as the boundary line between lots 2 and 3, section 22, it appears that some time since the survey the Quillayute river, into which the Dickey river flows, has changed its course through the western portion of the section, so that, instead of flowing in a curve around lot 9, south of these lots, it now flows almost directly west through lots 5 and 6, immediately south of lots 3 and 2, making the junction with the Dickey river at a point east of the west line of lot 3; that the Dickey river has not changed its course since the original survey, but by reason of the change in the course of the Quillayute river, it has become the boundary line for a portion of the south boundary of lot 3 instead of the Dickey.

The original call of the lines of respondent's lot 3, according to the government survey and plat, would have been as follows:

"Commencing at the northwest corner of said lot 3, section 22, township 28 north, range 15 west W. M.; thence easterly along the north line of said lot 3 to

the west bank of the Dickey river; thence southwest-
erly (or southerly) along the west bank of the Dickey
river to the west line of said lot 3; thence northerly
to the place of beginning.''

Since the change in the course of the Quillayute
river, a resurvey has been made by the United States
government which still shows the meander lines of the
streams as by the original survey, but respondent, in
describing the land to which he desired to quiet title,
alleged and described it according to the following
calls:

''Commencing at the northwest corner of lot 3,
section 22, township 28 north, of range 15 west W. M;
thence easterly along the north line of said lot 3 to the
west bank of the Dickey river; thence southerly along
the west bank of the Dickey river to the Quillayute
river; thence westerly along the north bank of the
Quillayute river to the west line of said lot 3; thence
northerly along the west line of said lot 3 to the place
of beginning.''

The land in controversy lies between the boundary
line as it appears in the plat of the survey and the
actual meander line of the Dickey river. If acreage,
as shown by the patent of respondent, is to prevail,
then the land in controversy belongs to appellant as
part of lot 2; while if the natural monument, the
Dickey river actual stream line, is to prevail, then the
land in controversy is part and parcel of respondent's
lot 3. Appellant's contention is that the meander lines,
as shown on the government's original plat and re-
survey, are not true, but that the Dickey river, instead
of flowing southwesterly from the point in the east
line of lot 3 and west line of lot 2, some distance south
of the north line of the section, in fact, at about the
place where the survey line between the two lots
would cross the meander line, turns somewhat east of
south.

To prove that condition appellant offered the evidence of a civil engineer named Hageman, to the effect that he had examined the territory in question and found that the course of the stream was not as shown on the government plat, but as he describes it on a plat which he produced which shows the stream flows east of south instead of southwesterly into the Quillayute river, and that as a result thereof lot 3, if extended to the actual stream, would contain a little more than 82 acres of land instead of 39.50 acres, and that lot 2 of appellant would be diminished by that much. Appellant, from this, contends that the acreage is so excessive, if the actual stream is fixed as the boundary line of lot 3, that it must be considered that the survey is fraudulent, and that therefore the actual and legal boundary between the lots should be as fixed by the meander lines of the survey.

The trial court rejected the plat made by Hageman and his evidence as to the correct course of the stream and the amount of land which respondent would acquire by having the boundary fixed by the actual stream.

It was shown that Hageman made no instrumental survey of the territory or the stream, but merely a visual survey without any actual measurements and without determining the exact course, sinuosities and location of the stream. He had never even made any land surveys, although he was probably professionally competent to do so. What he did in this matter, however, was merely nonexpert, and we cannot consider that his evidence was competent to prove the facts which it was offered to prove, or sufficient to contradict or impeach the official government survey. *Cragin v. Powell,* 128 U. S. 691, and cases cited; *Johnson v. Hurst,* 10 Idaho 308, 77 Pac. 784.

Appellant relies largely upon the case of *Security Land & Exp. Co. v. Burns*, 193 U. S. 167. That was a case arising in Minnesota and tried by the Minnesota courts and taken thence to the United States supreme court, where the original survey showed the fourth side of a tract of land to run to the margin of a lake, and meandered the margin of the lake. It was indisputably shown that the lake on that side was more than one-half of a mile from where the boundary on that side should have been. It was held in that case that the general rule that in matters of boundaries natural objects or monuments will control courses and distances is not absolute and inexorable, and that, where the result of a government survey is founded upon negligence and gross fraud and there is actually no lake, and adopting the lake as it is located as an actual monument would increase the acreage of the land four fold, the meander line cannot be regarded as a boundary, and the patentee is confined to the lands correctly described within the lines and distances of the plat of survey and of the field notes, and which the patentees actually bought and paid for; that, where the patentee has in fact received and is in possession of all of the land actually described in the lines and distances set forth in the field notes and referred to in the patents, and is seeking more on the theory that his plat and survey carries him to the water, a denial of that right on the ground that the survey was fraudulent, and that the natural boundary did not actually exist anywhere near the spot indicated, is a legal defense which can be set up by a defendant in an action of ejectment, and it is not necessary to seek the aid of equity to obtain a reformation of the patent.

But here it was *not indisputably established* that the plat of the survey was the result of, and founded upon, a gross negligence or fraud, and that there was

actually no river near the spot indicated, and that in adopting the stream as it is actually located would increase the patentee's land to such an extent as to be fraudulent or wholly inequitable. On the contrary, the evidence offered by the witness Hageman was not such evidence as would be heard in any court to impeach the official survey. We have in this case not only the original survey, but a resurvey made in the year 1916. It is also an indisputable fact that the actual course of the Dickey river, whatever may be the variation from the official meander line, enters from lot 2 into lot 3 south of the northerly boundary, and is therefore not remote from the land. The evidence of the witness Hageman as to the surplus acreage of lot 3 and the real variance of the actual course of the stream is nothing but the merest conjecture or guesswork. It certainly cannot be held to so far impeach the official surveys of the government as to show gross excess in the amount of land contained in lot 3.

The case of *Gazzam v. Lessee of Phillips*, 20 How. (61 U. S.) 372, also cited and relied upon by appellant, is not apposite. In that case there was no actual meander line or water boundary, but there was in fact an actual conflict and overlapping in the quantities of two portions of the survey of a tract of land from which the government issued patents to two patentees, which overlapped each other. The court observed:

"The sales in each case were made in conformity with the subdivisions, as marked upon the plat of the surveyor general then on file in the office, and to which all purchasers of the public land had access, and which constituted the guide of the register and receiver in making the sales."

So in this case, the sales in each case were made in conformity with the subdivisions as marked upon the plat of the survey, which were returned to the land office and which the purchasers of both had access to, and which showed that the boundary between the tracts was a stream of water called the Dickodochteder or "Dickey" river. This stream, actually touching both tracts and being permanent, apparent and visible, was a natural boundary and must be so considered, unless it can be said that the original survey was so grossly inaccurate as to amount to fraud upon the government and any of its grantees. Such a condition the appellant in nowise convincingly showed by the offered evidence of Hageman, or any other evidence.

We understand that this is a possessory action for real property under Rem. Code, § 785 *et seq.* Section 793 therein provides that:

"The plaintiff in such action shall set forth in his complaint the nature of his estate, claim, or title to the property, and the defendant may set up a legal or equitable defense to plaintiff's claims; and the superior title whether legal or equitable, shall prevail."

By the United States government system of surveys, a meander line is run when a water course or other body of water is the external boundary of the adjacent land. The line showing the place of the water course or other body of water and its course, sinuosities and distance is called a "meander line." The general rule adopted by both Federal and state courts is that meander lines are not run as boundaries of the fractional tracts thus surveyed, but for the purpose of defining the sinuosities of the banks of the streams and other bodies of water, and as a means of ascertaining the acreage of such body of land subject to

sale and which is to be paid for by the purchaser. It has, therefore, generally been held, both by Federal and state courts, that such meander lines are for the purpose of showing the border lines of the streams, but that the water courses themselves constitute the real boundaries. *Railroad Co. v. Schurmeir,* 7 Wall. (74 U. S.) 272; *Hardin v. Jordan,* 140 U. S. 371, and cases cited; *Washougal & La Camas Transp. Co. v. Dalles, Portland & A. Nav. Co.,* 27 Wash. 490, 68 Pac. 74; *Johnson v. Brown,* 33 Wash. 588, 74 Pac. 677; *Schmitz v. Klee,* 103 Wash. 9, 173 Pac. 1026; *Schlosser v. Cruickshank,* 96 Iowa 414, 65 N. W. 344, and cases cited. In the last case above cited, as here, appellants claimed that, as a patent from the government stated the number of acres of land purporting to be conveyed and which corresponded with the acreage within the meander line, plaintiffs had all the land which their remote grantor got from the government, and the land in dispute did not belong to them. It was held that "the statement of the number of acres in these patents in no way limits the extent of the grant. To so hold would, in effect, be holding that a meandered line was a boundary line, which we have seen is not the case. The riparian holder of the patent takes all the land to the shore of the lake, though he may thereby obtain a larger acreage than his patent calls for."

And there, as here, it was also claimed that the question of whether the meander line conformed to the sinuosities of the lake was one in fact to be determined in each case from the evidence, and if it did not follow the body of water, then the land lying between it and the body of water was not embraced within the grant. It was there held, in effect, that to show that the meander line did not in fact follow the sinuosities of the lake required very strong evidence in order to impeach and overcome the official survey

by the United States, and in that case it was held that the evidence in no way overcame same. And we so hold here. The evidence in no way overcomes the official survey by the United States of the meander lines of the Dickey river, at least, to show that the survey was so grossly inaccurate as to amount to fraud upon the government and any of its patentees. The most that we can say of it is that there was suspicion that the meander lines were not accurate as regards the course of the stream, but that does not suffice.

The owners of lands bordering on bodies of water have often bought with reference to access to the water, which constitutes an important element in the value and desirability of the land.

In *Mitchell v. Smale,* 140 U. S. 406, the title of the riparian owner of a fractional quarter section of land containing only 4.53 acres, as platted and patented, was sustained to 25 acres (about five times the call of his patent) between the meander line and the water line.

In *Sherwin v. Bitzer,* 97 Minn. 252, 106 N. W. 1046, the title of a riparian owner to 143.93 acres between the meander line and the lake in a different section was sustained where his patent called for but 68.6 acres; about the same proportional excess as in the instant case. For similar cases, see: *Kirby v. Potter,* 138 Cal. 686, 72 Pac. 338; *Johnson v. Tomlinson,* 41 Ore. 198, 68 Pac. 406; *Hanson v. Rice,* 88 Minn. 273, 92 N. W. 982; *Stoner v. Rice,* 121 Ind. 51, 22 N. E. 968, 6 L. R. A. 387.

The above discussion disposes of the primary question in controversy. It is claimed by appellant, in addition, that the court erred in refusing to receive in evidence tax receipts' showing appellant's payment of taxes upon 35 acres in lot 2, and tax records show-

ing payments of taxes by the owners of the land in lot 3 upon only 39.50 acres. Such evidence was not admissible. The assessing officer doubtless accepted the acreage shown by the government plat. Owners are not bound, for taxing purposes, by the acreage shown in their title deeds, nor are they bound by the acreage upon which the taxes are collected. It may be assessed upon an incorrect acreage for any length of time and, when the correct acreage is determined, may be corrected at any time. It may be evidence amounting to a corroborating circumstance which may have been considered in connection with other evidence, but it is not competent to establish title in either of any given tract or acreage of ground, or to impeach or detract from the title of the other.

Other claims of error as to the rejection of evidence by the court are of like nature and untenable.

Decree affirmed.

BRIDGES, FULLERTON, MOUNT, and TOLMAN, JJ., concur.