[Sac. No. 4472. In Bank.—August 17, 1931.]

IANTHA C. ANDERSON, Respondent, v. MARY S. TROTTER, Appellant.

JOHN RUSSEL ANDERSON et al., Respondents, v. MARY S. TROTTER, Appellant.

BAYLIS ESTATE COMPANY (a Corporation), Respondent, v. MARY S. TROTTER, Appellant.

William Sea, Jr., for Appellant.

Herbert V. Keeling and Lovett K. Fraser for Respondents.

PLUMMER, J., *pro tem.*—The three actions above named were tried together, and involve only one question, to wit, the ownership of a tract of land lying between the meander line and the waters of Clear Lake. The respective plaintiffs had judgment and the defendant appeals.

The actions were brought to quiet the title to lots 1, 2, 3, 4 and 5 of section 29, township 15 north, range 7 west, M. D. B. & M., abutting on Clear Lake, the plaintiffs alleging ownership to the actual water-line on the lake, irrespective of the meander line, as shown by the original survey of the property in dispute. The tract in dispute involves approximately 83 acres, of which the plaintiff Iantha C. Anderson claims to be the owner of 39.50 acres. The plaintiff John Russel Anderson alleges ownership to 43 acres of the tract, and the plaintiff Baylis Estate Company, a corporation, alleges ownership to approximately 2.25 acres. The record shows ownership in the plaintiff John Russel Anderson of lots 1 and 2; ownership in Iantha C. Anderson of lots 3 and 4, save and except a certain portion thereof owned

by the Baylis Estate Company, lot 5 being owned also by the Baylis Estate Company.

Section 29ʹ was originally surveyed in December, 1897, by George Tucker, a regularly licensed United States surveyor, and the plat thereof was subsequently filed in the office of the surveyor-general at San Francisco, California, and approved by the surveyor-general on the eighteenth day of December, 1876. In 1925 a resurvey of the premises involved was made by William H. Thorne, which survey was approved by the United States supervisor of surveys, on the twenty-sixth day of January, 1926, and by the Acting Commissioner of the United States General Land Office on March 16, 1926. The following plat shows the difference in the respective surveys:

The Tucker survey began at point "A" and ran a line westerly to a point marked "B"; thence northerly to a point marked "C", returning to the point of beginning. What is known as the meander line of Clear Lake was run as follows: "A" to "D"; thence to point marked "E"; thence to point marked "F"; thence to point marked "C". This latter line was described on the plat as the meander line of Clear Lake, and the plat filed with the United States surveyor-general and in the office of the interior department, shows the water-line of Clear Lake coincident with the meander line of the survey made by Tucker in 1875. It being discovered later that the meander line of the lake, as run and platted by Tucker, did not actually coincide with the water-line of the lake, a resurvey was made in 1925, which resurvey gives the meander line indicated on the plat as running from "E" to "G" and from "G" to "F", and running a line from "F" to "E", incloses a tract comprising a trifle over 83 acres, the respective plaintiffs alleging ownership to portions of the 83 acres as heretofore described, by reason of their ownership of lands described in the Tucker survey to which we have referred. A duly certified copy of the plat of the original survey made by Tucker in 1875 was admitted in evidence, and the meander line of the survey and the plat coincide as to the water-line of Clear Lake, that is, the original plat does not show the existence of any land between the meander line of the survey and the actual water-line of the lake.

The patents issued by the United States government, under which the respective plaintiffs claim, describe the land conveyed by lots numbered as we have indicated on the plat, containing so many acres according to the official plat of the survey of the lands returned to the general land office of the surveyor-general, etc. In other words, the lands were conveyed according to the plat of the survey thereof made by Tucker, which describe the lands as extending to and abutting upon the waters of Clear Lake.

The court found that a patent was issued to Algernon Sidney Jones for 126.1 acres, and that there were approximately 41 acres between the meander line of said land and Clear Lake, which said 41 acres were included in said patent

to Algernon Sidney Jones from the United States of America, and that 38.78 acres of the same lies between the meander line of the plaintiff Iantha C. Anderson and Clear Lake, and is a part of the land conveyed by said patent.

As to the property claimed by the plaintiff John Russel Anderson, the court found that the United States government issued a patent to Harvey W. Grigsby for 155.79 acres, and that there were approximately 42.72 acres between the meander line of said land and Clear Lake, and which said 42.72 acres were included and conveyed by the patent to Harvey W. Grigsby.

The court further found that as to the Baylis Estate Company the 2.25 acres claimed by said estate were covered by the patent issued to Algernon Sidney Jones, as above stated.

The plaintiffs in this action claim the property through mesne conveyances from the patentees named. Following the Thorne survey a patent was issued by the United States government to the defendant, which includes the land indicated on the plat to which we have referred, as follows: Beginning at point "E"; thence to point marked "G"; thence to point marked "F"; thence to point of beginning.

The meander line of the Tucker survey, according to which the plat was made, filed and approved, as heretofore stated, is as follows:

"Beginning at meander post on south boundary of township 17.70 chains east of corner to sections 32 and 33.

*In Section 33*

| N. 57 deg. W. | 15.50 chains | to corner to sections 28, 29, 32, 33. Thence |
| West | 14.00 chains. | In Section 29 |
| N. 1 deg. W. | 8.00 chains | |
| N. 13 deg. E. | 10.00 " | |
| N. 20 deg. E. | 11.00 " | |
| N. 57 deg. E. | 6.00 " | |
| North | 4.00 " | |
| N. 80 deg. W. | 53.00 " | S. Jones cabin S. 3 deg. chains. |
| S. 60¼ deg. W. | 28.50 " | to fractional corner to sections 29 and 30." |

Approximately fifty years later a different plat was filed after the Thorne survey, indicating a different meander line, as we have shown by the lines running from points "E" to "G", "G" to "F" and "F" to "E". The testimony shows that the land included within the Thorne survey and lying between the meander line of the Tucker survey and the waters of Clear Lake was rocky, covered by live-oak, chamisal and manzanita trees, and was of little value, the testimony being to the effect that the land at the time of the Tucker survey was not worth over $1.25 an acre, or an aggregate sum of $100, was not suitable to cultivation, and during all the years intervening between the Tucker and the Thorne surveys was used only for pasturage purposes. Some of the trees thereon were cut for use as firewood. Following the Thorne survey the defendant and her husband built a cabin on one corner of the disputed tract. Taxes were paid upon the disputed premises by the plaintiffs in this action for a number of years. The trial court, however, did not make any finding as to adverse possession by any of the parties hereto, and we have found nothing in the testimony which would justify such finding.

The claim of the plaintiffs, as we have stated, is based upon the survey made in 1875, and carried with it all the lands lying between the lots mentioned in the patents and the actual water-line of the lake. The claim of the defendant is based upon the theory that the 83 acres of land is sufficient in size to warrant and demand a finding that the Tucker survey was fraudulent and that no title or claim of ownership to the disputed premises can be based thereon. The trial court found against the claim of the defendant, holding that there was no basis for setting aside the Tucker survey, or holding that it was the result of either mistake or fraudulent act, and that under the law the water-line, and not the meander line, constituted the true boundary of the patented lands, and that the subsequent patent based upon a survey made fifty years later conveyed no title.

The patents issued following the Tucker survey purported to convey the land according to the plat on file in the general land office, which plat gave the waters of Clear Lake as the boundary line. In 9 C. J., page 180, section 50, the rule with reference to such conveyances is thus

stated: "When maps, plats or field notes are referred to in a grant or conveyance they are to be regarded as incorporated into the instrument and are usually held to furnish the true description of the boundaries of the land." It will be noticed that the rule here stated reads—"maps, plats *or* field notes", not "maps, plats and field notes". ■ In the instant case the deed refers to the "official plat", and does not mention the field-notes. The plat gives Clear Lake as the boundary. Hence, the application of the rule set forth in section 830 of the Civil Code, as follows: "Except where the grant under which the land is held, indicates a different intent, the owner of the upland, when it borders on tide-water, takes to ordinary high water mark; when it borders upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream." ■ In 9 C. J., page 181, section 51, the rule is stated as follows: "Grants by the United States of its public lands bounded on streams or other waters, navigable or non-navigable, made without reservation or restriction, are to be construed according to their effect and according to the law of the state in which the land lies." "The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary, the purpose of meander lines being merely for the benefit of the government in ascertaining the quantity of land in the survey for which it requires payment; and the rules adopted in the various states as to the extent of the title of the owner of land bounded on rivers and other bodies of water. apply in the case of land bounded on meandered waters." (9 C. J., p. 189, sec. 69.)

■ The exceptions to this rule include references to bodies of water which do not exist, and to tracts of land so large as to palpably indicate fraud or such a mistake in the survey that a court will, for equitable reasons, treat the meander line as the boundary. As we have stated, the testimony in this case shows land of little value, land suitable only for

pasturage purposes, and land that has never been cultivated or used other than for pasturage purposes and the cutting of small quantities of wood for use as fuel.

In *Craig* v. *White,* 187 Cal. 489 [202 Pac. 648], this court had before it a somewhat similar question. There the meander line was sufficiently distant from the shore line of Clear Lake as to omit from the survey about 350 acres of land. This tract of land was about thirteen miles in length. The principle there stated, however, is applicable here, to wit: ''These conveyances were made on the theory that the meander line as marked by the United States survey, constituted the actual boundary between the up-lands belonging to the government and the state lands included within the boundaries of the lake. Prior to the issuance of state patents to the defendant, United States patents had been duly issued to settlers on the government upland bordering on this part of the lake, which patents, under the established rule governing such transfers, conveyed title to the patentees, to the actual margin of the lake.'' (Citing Civ. Code, sec. 830; *Lamprey* v. *State,* 52 Minn. 181 [38 Am. St. Rep. 541, 18 L. R. A. 670, 53 N. W. 1139]; *Hardin* v. *Jordan,* 140 U. S. 371 [35 L. Ed. 428, 11 Sup. Ct. Rep. 808].) Some claim was made in that case that the waters of the lake had receded, but the evidence shows that such was not the case.

In *Foss* v. *Johnstone,* 158 Cal. 119 [110 Pac. 294, 298], this court, in answering like questions involved in the instant case, used the following language: ''The patents expressly declare that they grant the lots mentioned and that they contain a stated number of acres, being the same number of acres mentioned in the plat of the corresponding lots. It is claimed that this shows an intent to grant no more than the stated number of acres, and to make the meander line the boundary, and not the shore line of the pond. This claim is disposed of by the following passage from *Hardin* v. *Jordan,* 140 U. S. 384 [35 L. Ed. 428, 11 Sup. Ct. Rep. 808]: 'It has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream, or other body of water. The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to

be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held by the federal and state courts, that such meander lines are (not) intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered; and that the waters themselves constitute the real boundary.' " The court then cites a number of cases where the lands granted corresponded with the plat but did not include acreage between the meander line and the shore line, holding that such acreage was conveyed, as the shore line constituted the boundary. The opinion in the Foss case, *supra,* quoting from *Mitchell* v. *Smale,* 140 U. S. 406 [35 L. Ed. 442, 11 Sup. Ct. Rep. 819, 840], thus sets forth the rule as to the binding effect of the official plat: "The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object of monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow." To the same effect is the case of *Kirby* v. *Potter,* 138 Cal. 686 [72 Pac. 338].

In *Maginnis* v. *Hurlbutt,* 49 Cal. App. 460 [193 Pac. 606], the District Court of Appeal for the First District had before it the question of ownership of lands lying between the meander line and the actual shore line of Clear Lake. It was there held that the grant of land by the government carried the boundary to the shore line of the lake and was not limited to the meander line. The briefs of counsel state that 38 acres were included in the tract lying between the meander line and the shore line of the lake. The opinion of the court, however, does not indicate the number of acres. The Maginnis case differs from the case at bar in that the title asserted as against the original patent was based upon an act of the state of California commonly known as the "Swamp Land Act". The character of the land, however, and the character of the title claimed does not affect the principle which we have heretofore stated that a patent purporting to convey land according to a plat which describes the land as bounded by a body of water, conveys the land

to the shore line unlimited by the meander line, unless there enters into the case a question of fraud or palpable mistake justifying a court of equity to intervene, and the question therefore arises: Should the court in this case have held that the tract of land between the meander line of the Tucker survey and the shore line of Clear Lake, was such as to limit the boundary of the lands claimed by the plaintiff, to the meander line shown by the Tucker survey, or was the court correct in fixing the boundary of the plaintiff's land according to the plat on file?

Appellant bases her claim for reversal upon the cases of *Jeems Bayou Fishing & Hunting Club et al.* v. *United States,* 260 U. S. 561 [67 L. Ed. 402, 43 Sup. Ct. Rep. 205]; *Security Land & Exploration Co.* v. *Burns,* 193 U. S. 167 [48 L. Ed. 662, 24 Sup. Ct. Rep. 425]; Id., 87 Minn. 97 [94 Am. St. Rep. 684, 63 L. R. A. 157, 91 N. W. 304]; *Lee Wilson & Co.* v. *United States,* 245 U. S. 24 [62 L. Ed. 128, 38 Sup. Ct. Rep. 21]; *Producers Oil Co.* v. *Hazen,* 238 U. S. 325 [59 L. Ed. 1330, 35 Sup. Ct. Rep. 755]; *French-Glenn Livestock Co.* v. *Springer,* 185 U. S. 47 [46 L. Ed. 800, 22 Sup. Ct. Rep. 563]; *Scott* v. *Lattig,* 227 U. S. 229 [44 L. R. A. (N. S.) 107, 57 L. Ed. 490, 33 Sup. Ct. Rep. 242]. A review of these cases, however, we think shows that they are readily distinguishable from the facts found by the court in this case. In the Jeems Bayou Fishing & Hunting Club case, *supra,* a compact body of land of 500 acres was omitted from the original survey. The court there held that the omission of such a large tract of land indicated a deliberate purpose on the part of the surveyor and rendered his actions fraudulent. In the case of Security Land & Exploration Co., *supra,* the patent called for 140 acres. The omitted land comprised 570 acres, which, according to the language of the court, indicated that the surveyor never saw the grant and never saw the lake he pretended to have measured. In the case of Lee Wilson & Co., *supra,* the controversy involved 853 acres of unsurveyed swamp-land. In the French-Glenn Livestock Co. case, *supra,* a large tract of land was involved and it was found that there was no body of water to meander. The case of *United States* v. *Lane,* 260 U. S. 662 [67 L. Ed. 448, 43 Sup. Ct. Rep. 236], where the facts are more similar to those involved here, held, quoting from the syllabus: "A patent to land under a sur-

vey along the margin of a lake, which purports to follow such margin, will carry title to the water's edge, where the land is wild and remote and of little value, and numerous ravines run into the land from the water, so that the running of the line on the water's edge would have been difficult, while the survey follows with fair accuracy the contour of the lake, although in a length of 4000 feet, with an indicated area of 271 acres, about 98 acres are outside of the meander line." The opinions in the Jeems case, *supra,* and the Lane case, *supra,* were written by the same justice. In the former case the size of the tract of land omitted was held to indicate fraud, while in the Lane case 98 acres omitted were not held to constitute a sufficiently large body of land to indicate fraud or deliberate mistake, etc.

In deciding the Lane case the court used the following language, which is pertinent here: "The official plat made from such survey does not show the meander line, but shows the general form of the lake adduced therefrom and the surrounding fractional lots adjoining and bordering on the same. The patents, when issued, refer to this plat for identification of the lots conveyed, and are equivalent to, and have the physical effect of a declaration that they extend to, and are bounded by the lake or stream." This language is quoted from the case of *Mitchell* v. *Smale,* 140 U. S. 406 [35 L. Ed. 442, 11 Sup. Ct. Rep. 819, 840]. The court then proceeds: "While the facts are somewhat different, and the extent of the omission somewhat greater, we think the general rule should likewise be applied in the remaining two cases. The Warren survey and plat here indicate an area of about 271 acres in the fractional subdivisions conveyed. The lands added by the new survey constitute a compact body of 97.64 acres, 65.77 acres of which are involved in the Greene case and 14.13 acres in the Loucks case, having the outline of a long and rather irregular crescent, with the outer curve next to the water," etc.

In the case of *Barringer* v. *Davis,* 120 N. W. 65, a case referred to in the citations which we have given, it is held that the meander line is not the limit of the land conveyed when the lands border upon a body of water, but that the shore line constitutes the true boundary. On pages 66 and 67 of the volume cited are two maps or plats showing the lands in controversy. The original survey made in 1875

called for 154 acres. A resurvey made in 1901 added 104 acres. The court held that the original patents conveyed the lands in controversy. This case is also reported in 141 Iowa, 419, 433. It would appear from the opinion and the plats in the Barringer case that the acreage involved was considerably larger than that with which we are dealing.

In the case of *Rue* v. *Oregon & Washington R. Co.*, 109 Wash. 436 [186 Pac. 1074], the Supreme Court of Washington held that 43 acres of land lying between the meander line and the shore line was insufficient upon which to hold that the survey was fraudulent or so palpably erroneous as to justify the interference of a court of equity. Other questions were involved in that case, but the principles there stated are applicable here.

In the case of *Mitchell* v. *Smale, supra,* the patent covered 4.53 acres. As platted it was held to carry title to 25 acres. In *Sherwin* v. *Bitzer*, 97 Minn. 252 [106 N. W. 1046], the title to the riparian owner of 143.93 acres of land between the meander line and the lake in a different section was sustained where his patent called for but 68.06 acres. As reported in 106 N. W. 1046, this case exhibits plats illustrating the questions involved and the lands in dispute.

In *Schlosser* v. *Cruickshank et al.*, 96 Iowa, 414 [65 N. W. 344], the opinion discloses that there were 100 acres between the meander line and the shore of the lake. It was there held that the patent under the cases which we have cited carried the boundary line to the shore of the lake.

In *Schmitz* v. *Klee*, 103 Wash. 9 [173 Pac. 1026, 1027], the meander line left between it and the shore line 30.71 acres of high land. It was held that the patent conveyed the intervening tract. A plat showing the unsurveyed land appears on page 1027 of the volume cited.

In *Greene et al.* v. *United States*, 274 Fed. 145, 149, and *Loucks et al.* v. *United States (U. S.* v. *Lane)*, 260 U. S. 662 [67 L. Ed. 448, 43 Sup. Ct. Rep. 236], are quoted practically all the cases which we have cited, and where a larger tract of land was omitted than lies between the Tucker meander line and the shore of Clear Lake, the court said: "The case is well within the rule that a meander line is not to be considered as a line of boundary where the plat of survey shows a body of water as the boundary," etc.

Some minor questions were presented as to errors in the admission of testimony, but they are not such as to affect the application of the legal principles enunciated by the foregoing cases, and in view of what we have heretofore stated, we think that the judgment of the trial court should be affirmed, and it is so ordered.

Richards, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.

A petition for a writ of *certiorari* was denied by the Supreme Court of the United States on January 25, 1932.